UTAH OIL COMPANY and Floyd E. Benton, Plaintiffs and Appellants,

v.

J. D. HARRIS, dba Harris Truck and Equipment Company, Gibbons and Reed Co., a corporation, State of Utah, by and through its Road Commission, Kenneth V. Connary and Olive Connary, Defendants and Respondents.

No. 14758.

Supreme Court of Utah.

June 17, 1977.

---

Ronald C. Barker, Salt Lake City, for plaintiffs and appellants.

Darwin C. Hansen, Bountiful, Robert B. Hansen, Atty. Gen., Leland D. Ford, Asst. Atty. Gen., Richard L. Bird, Jr., Bryce E. Rowe, Salt Lake City, George K. Fadel, Bountiful, for defendants and respondents.

HALL, Justice:

This appeal arises out of the dismissal with prejudice of a suit for damages for the destruction of a right-of-way, the same having been filed March 20, 1974, followed by the filing of appropriate responsive pleadings, motions, discovery, and ultimate pre-trial setting on September 12, 1974, at which time the pre-trial hearing was stricken by reason of a compromise settlement reached. Included in the order striking the pre-trial was the further provision that the matter was not to be rescheduled for trial without the filing of a new request therefor. On March 12, 1975, counsel for plaintiffs filed a notice of withdrawal and on April 28, 1975, only defendant Harris filed a notice provided by statute[1] for plaintiffs to appoint a successor attorney or for plaintiffs to appear in person. Motion to dismiss for failure to diligently prosecute was filed July 12, 1976, pursuant to court rule.[2] Said motion was heard on August 3, 1976, plaintiffs appearing in person and by present counsel and the court entered the order of dismissal complained of.

The sole question presented here is whether or not the trial court abused its discretion. Both parties rely principally upon the prior pronouncements of this court in *Westinghouse Electric Supply v. Paul W. Larsen Contractor, Inc.*[3] which was cited with approval in *Polk, et al. v. Ivers, et ux.*,[4] however, those cases are not fully dispositive since the facts are different in that the statutory provision in footnote 1 above, was not dealt with therein.

The statutory language in need of interpretation is as follows:

78–51–36. Notice to appoint successor. —When an attorney dies or is removed or suspended, or ceases to act as such, a party to an action or proceeding for whom he was acting as attorney must before any further proceedings are had against him be required by the adverse party, by written notice, to appoint another attorney or to appear in person.

The foregoing clearly appears to have been enacted to safeguard a litigant who finds himself without counsel and prevents further proceedings until he again has counsel or chooses to proceed pro se. It is not a *court* directive nor does it exact any penalty against the litigant who fails for one reason or another to engage new counsel since, by its own terms, it affords him the *alternative* of appearing in person. Consequently, when a litigant does fail to engage new counsel, that, in and of itself, is not an adequate basis to default him or to dismiss as against him with prejudice.

Looking now to the specific facts of this case, it is noted that from and after the date of said statutory notice to plaintiffs there were no "proceedings" of any kind brought by any of the parties to the lawsuit until defendant Harris filed his motion to dismiss for failure to diligently prosecute on the grounds of failure to engage new coun-

---

1. Section 78–51–36, U.C.A.1953.

2. Rule 41(b), U.R.C.P.

3. Utah, 544 P.2d 876 (1975).

4. Utah 561 P.2d 1075 (1977).

sel and to take further action to move the case along during the intervening 16 months. At the time set for hearing on the motion plaintiff appeared in person and with counsel and thus complied with the notice by so appearing at the *next proceeding*.

■ Turning now to the issue as to whether or not a lapse of 16 months in prosecuting a claim for relief is sufficient to support a dismissal with prejudice, this court has been active in that area and has held that where all of the litigants had power to obtain relief and failed to do so, it is error to dismiss with prejudice.[5] None of the defendants requested a re-setting of either a pre-trial conference or trial as was mandated by the court previously when the pre-trial was suspended by reason of settlement negotiations.

The *Westinghouse* case, footnote 3 above, and the cases cited therein, have applicability to the matter of the court's discretion in dismissing for failure to prosecute and the court observed as follows:

> . . . it is indeed commendable to handle cases with dispatch and to move calendars with expedition in order to keep them up to date. But it is even more important to keep in mind that the very reason for the existence of courts is to afford disputants an opportunity to be heard and to do justice between them. In conformity with that principle the courts generally tend to favor granting relief from default judgment where there is any reasonable excuse, unless it will result in substantial prejudice or injustice to the adverse party.

It is our conclusion that the trial court failed to give proper weight to the higher priority; and that under the circumstances described herein, the order of dismissal (with prejudice) was an abuse of discretion.

■ The court at that time listed the following guidelines in determining justifiable excuses for delay.

1. The conduct of both parties.

2. The opportunity each has had to move the case forward.

3. What each of the parties have done to move the case forward.

4. What difficulty or prejudice may have been caused to the other side.

5. And, most important, whether injustice may result from the dismissal.

■ Applying the foregoing rules to the case at hand, it is obvious that plaintiffs' lack of diligence in prosecuting over 16 months was reasonably excusable in light of the settlement efforts and had defendants been anxious to proceed they need only have taken such affirmative step themselves. Also, no prejudice to defendants' position is evident while serious injustice may well exist as result of the dismissal.

Reversed and remanded for further proceedings. Costs to plaintiffs.

CROCKETT and WILKINS, JJ., concur.

ELLETT, C. J., concurs in result.

MAUGHAN, J., having disqualified himself, does not participate herein.

WAHLQUIST, District Judge (dissenting).

I dissent.

The general rule is that the record should be studied with the intent to determine whether there is adequate support in the record for the trial court's ruling. It is my belief that this record does support the trial court.

At the hearing on the motion the attorney for Harris argued that his client was in a dilemma because of the delays caused by Benton's lack of prosecution of this action. Benton had filed an action alleging that he owned certain rights in a right-of-way and that Harris, incidental to some excavation work, had interfered with that right-of-way. Another person, Haddad, had also filed a similar action alleging rights in the same right-of-way and seeking damages from Harris for the same diggings. Trial in the Haddad matter was to be forthwith.

---

5. *Crystal Lime & Cement Co. v. Robbins*, 8 Utah 2d 389, 335 P.2d 624 (1959).

The proof in the two cases, except for damages and possible proof of ownership of the right-of-way, would be identical. Harris wanted the trial court either to dismiss Benton's action with prejudice or to join it with the Haddad matter. Gibbons and Reed and other defendants had never been served in the Haddad matter and they objected to appearing in it, but they did join in the motion to dismiss the Benton complaint for lack of activity. There is no doubt that if Harris tried both cases, he would be compelled to present a great deal of evidence twice. During Harris' attorney's statement to the court, he stated:

Now, at that time, at that point in time, Defendant Harris, on April the 28th, 1975, pursuant to Utah Code Annotated 78–51–36, filed a notice requesting that Mr. Benton either enter an appearance personally in behalf of Utah Oil Company or that he retain counsel and ask counsel to make an appearance. That was April 28th, 1975. Now, since that time, Your Honor, neither plaintiff has taken any action to pursue this matter to an ultimate conclusion.

Now, I'd like to indicate to the Court, and in fairness to Mr. Benton, he came to my office, Your Honor—and this is not in the affidavit, I failed to put it there and it should be made part of the record—he came to my office probably in late June or early July of 1975, as I recall, and discussed this matter with me. At that time I indicated to him that he ought to get an attorney to represent him and have that attorney file an entry of appearance, particularly in light of my notice to appoint successor counsel. We talked about settlement at that time, and I told him that I could see no way that this case could be settled unless it were settled coincident with and as a part of any settlement with the Haddad case. He indicated to me he would talk to Mr. Haddad and get back to me. I sent him a letter dated August 25, 1975, indicating to him that it's my understanding he was going to talk to Mr. Haddad and get back to me, and then I put on the bottom of that letter a P.S. indicating that in any

event he should obtain counsel and have that counsel make an entry of appearance.

Now, that letter was dated August 25th, 1975. Since this time, Your Honor, I have heard absolutely nothing from the plaintiff, or from any attorney who indicated to me that that attorney was representing the plaintiff.

The new attorney for Benton, Mr. Barker, did not appear at this hearing, but Mr. Ivins appeared and stated that he would represent Mr. Barker. Mr. Ivins did not challenge any of the statements made by the attorney for Harris, or imply that his client had been misled in any way. Mr. Ivins simply argued that 16 months of inactivity did not justify a dismissal.

The trial court was led to believe that Benton's inactivity for the past 16 months was without justification of any sort, and that it had put others to unnecessary expense. The court orally granted the motion to dismiss.

Mr. Barker, attorney for Harris, filed a motion requesting that the court reconsider its ruling. The hearing was duly set for 10:00 a. m. on a certain date. On that date, attorneys for the defendants appeared on time. Mr. Barker did not appear at the scheduled hour. Mr. Ivins was again in the courtroom and assured the court that Mr. Barker was on his way. The court continued the matter from time to time throughout the morning. At 11:30 a. m. attorney for Gibbons and Reed firmly requested that the matter be disposed of. The spectacle of the defense attorneys for the various parties waiting to be heard on the matter and the moving party not appearing was certainly an unpleasantness. This failure to appear remains unexplained. The trial court then permitted the earlier ruling to remain.

One of the greatest criticisms of the court system is made by the litigants who insist that our tolerances for unreasonable delays unnecessarily require increased costs and emotional trauma. I see no abuse of discretion on the part of the trial court in this matter.