Steve STUCKER and Michelle Stucker,
Plaintiffs and Appellants,

v.

SUMMIT COUNTY, Highland Estates Homeowner's Association, Kathy Mears, Dave Rich, Elwayne Daly, and Sue Smith, Defendants and Appellees.

No. 920263–CA.

Court of Appeals of Utah.

Feb. 24, 1994.

Robert M. Felton (Argued), Salt Lake City, for plaintiffs and appellants.

Jody K. Burnett (Argued), Williams & Hunt, Salt Lake City, for defendants and appellees.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiffs Steve and Michelle Stucker appeal from the trial court's order granting summary judgment in favor of defendants and upholding Summit County's denial of the Stuckers' application for a building permit. We affirm.

## BACKGROUND

The Stuckers purchased Lot 225 of the Highland Estates Subdivision, located in Summit County (County), in 1990. Shortly thereafter, they applied to the Summit County Planning Commission (Planning Commission) for a building permit to construct and operate an auto-body repair shop on Lot 225. In 1964, when the developer of the Highland Estates Subdivision filed the subdivision plat with the County, Lot 225 was designated as commercial property. At that time, the County had not adopted a master plan or zoning ordinances concerning this property. In 1977, however, the County adopted the Development Code of Summit County (1977 Code), which controlled land use by assigning "hard" zoning designations to specific parcels of property, i.e., residential, commercial, etc. The 1977 Code retained Lot 225's designation as commercial property. Under the 1977 Code, an auto-body repair shop was a "permitted use" of commercial property, defined as "a use of land for which no conditional use permit is required."

In 1985, the County adopted the Snyderville Basin Development Code (1985 Code), which imposed a two class permit system upon land in the Snyderville Basin, located between Park City and Interstate 80, that included Lot 225.[1] The 1977 Code remains in effect for all other parts of the County. The 1985 Code established the Snyderville Basin Zoning District and replaced traditional "hard" zoning designations used in the 1977 Code with a permit system, sometimes referred to as "performance zoning." This new system requires that all proposed devel-

---

1. A Class I permit is issued by the County's Planning Staff, unless the Planning Director determines it would be in the best interest of the public that a Class II permit be sought from the Planning Commission. Deposition testimony indicates that a Class II permit is generally required where there is public interest in the proposed project, thus requiring a public hearing before the Planning Commission issues a building permit.

opments within the zoning district satisfy certain "absolute policies" prior to receiving a development permit. Part of the process includes a compatibility assessment, performed by the Planning Commission, which gauges the compatibility of the proposed development with neighboring land uses.[2]

Under the 1985 Code, this compatibility assessment process occurs prior to the formal filing of an application for a building permit and includes a neighborhood meeting. When a developer and affected property owners [3] cannot reach a consensus of opinion regarding compatibility of the proposed land use, the Planning Commission holds a public hearing prior to making a decision and listens to the concerns of all affected property owners and interested parties regarding the proposed project's compatibility. A building permit application which fails to meet any of the absolute policies is automatically denied.

The County denied the Stuckers' building permit application for failure to meet the 1985 Code's absolute policy of compatibility. The Stuckers subsequently exhausted their administrative remedies by timely appealing to the Summit County Commission, which upheld the denial of the building permit. The Stuckers then appealed to the district court. On August 30, 1991, the trial court entered a minute entry, without enunciating a basis for its decision, granting the County's Motion for Summary Judgment and denying the Stuckers' corresponding motion, thereby upholding the County's denial of the Stuckers' requested building permit.

## ISSUES

The Stuckers raise three issues on appeal: (1) Do they have a vested right to use Lot 225 for a body shop pursuant to (a) the Highland Estates Subdivision Plat filed and accepted by the County in 1964, (b) the 1977 Code, or (c) the 1985 Code?; (2) Does the 1985 Code impermissibly give veto power to the Stuckers' neighbors by allowing them to voice their concerns to the Planning Commission at a public hearing?; (3) Does equitable estoppel bar the County from denying the Stuckers' request for a building permit?

## STANDARD OF REVIEW

Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Allen v. Ortez*, 802 P.2d 1307, 1309 (Utah 1990). "Because summary judgment by definition does not resolve factual issues, a challenge to summary judgment presents for review only questions of law. We review those conclusions for correctness, according no particular deference to the trial court." *Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 887 (Utah 1988); *accord Bonham v. Morgan*, 788 P.2d 497, 499 (Utah 1989) (per curiam). In determining whether the trial court correctly found that there was no genuine issue of material fact, we view the facts and inferences to be drawn therefrom in the light most favorable to the losing party. *Hamblin v.*

**2.** Paragraph 5.6.3 of the 1985 Code addresses the topic of Compatibility Assessment:

Traditional zoning assumes that mixed land uses are not compatible, and the only way to resolve this problem is to physically separate them from one another. Little consideration is given to the possibility that mixed land uses, with different impacts, could be made to compliment [sic] each other. The Planning Commission shall, within its sound discretion, find development to be reasonably compatible and sensitive to the immediate environment of the site and neighborhood relative to: scale, bulk, and building height; density and historical character; disposition and orientation of buildings on the lot; buffering, and visual integrity. Land use conflicts which are likely to arise between land uses include issues involving: noise, odor, dust, light, attractive nuisance, shadow, aesthetics, privacy, access, safety, etc.

The Planning Commission as a result of the outcome of the following procedures and criteria will determine the compatibility of new development or redevelopment with neighboring uses.

(1) *Neighborhood Meeting*

A meeting will be held with the affected neighborhood prior to the filing of a Class I or II application. The purpose of the meeting is for the developer to interact with the neighborhood, and for the developer to inform and obtain feedback from the neighborhood on a specific development in a relaxed atmosphere.

**3.** "Affected property owners" are identified as all property owners "within 1000 ft. of the development proposal." The 1985 Code requires that all such individuals "shall be notified [by mail] of the meeting time, date and place."

*City of Clearfield,* 795 P.2d 1133, 1135 (Utah 1990).

## ANALYSIS

### A. Vested Right

#### 1. *Vested Right Under 1964 Plat*

■ The Stuckers argue for the first time on appeal that the County used the 1985 Code to impermissibly amend the Highland Estates Subdivision Plat without complying with the applicable statutes. *See* Utah Code Ann. §§ 57–5–7.1, –8 (1990). As this argument was not raised before the trial court, we decline to address it on appeal. *Shire Dev. v. Frontier Invs.,* 799 P.2d 221, 224 (Utah App.1990).

#### 2. *Vested Right Under 1977 Code*

■ The Stuckers also argue on appeal that they have a vested right to commercially develop Lot 225 under the provisions of the 1977 Code. It is undisputed that Lot 225 was designated C–1 on the Highland Estates Subdivision Plat filed with the County and that an auto-body repair shop was a permitted use for commercial property zoned C–1.[4] Thus, were the 1977 Code applicable in this case, the Stuckers would undoubtedly have received permission to conduct their auto-body repair business on Lot 225.

However, the Stuckers' assertion of a vested right to develop Lot 225 under the 1977 Code is mistaken. The Utah Supreme Court has clearly stated that "the date of application for a building permit fixe[s] the applicable zoning laws." *Western Land Equities, Inc. v. City of Logan,* 617 P.2d 388, 391 (Utah 1980); *accord Scherbel v. Salt Lake City Corp.,* 758 P.2d 897, 900 (Utah 1988).

It is undisputed that the Stuckers purchased Lot 225 in 1990 and applied for a building permit thereafter. Likewise, it is undisputed that Lot 225 is within that area of land governed by the 1985 Code. Hence, at the time the Stuckers applied for a building permit, the 1985 Code was in effect.[5] Accordingly, pursuant to the *Western Land* decision, the Stuckers' application for a building permit in 1990 fixed the 1985 Code as the governing ordinance, not the 1977 Code. Thus, the Stuckers have no claim of a vested right under the 1977 Code because they did not apply for a building permit during the period when the 1977 Code applied to Lot 225.

#### 3. *Vested Right Under the 1985 Code's Grandfather Clause*

■ The Stuckers argue further that the "grandfather" provision of the 1985 Code, found in the Statement of Intent, preserves their rights under the 1977 Code by granting them the option to develop Lot 225 under either the 1977 or 1985 Codes. Section 1.3 of the 1985 Code, titled "Repeal and Continuing Effect," states that any property in the Snyderville Basin Zoning District may be developed under either the 1977 or 1985 Codes if "the Summit County Planning Commission has granted County Master Plan approval." To clarify this section, the drafters of the 1985 Code included a "Statement of Intent":

> The intent of ... section [1.3] is to allow continued development under the Development Code of Summit County ([1977] Code) of any property *where development had been initiated through master plan or zone change approval* prior to the effective date of The Snyderville Basin Development Code ([1985] Code). *Examples of those "grandfathered" properties are currently identified as, but not limited to, the following:*
>
> —Jeremy Ranch, a Planned Unit Development consisting of 750 single family

---

4. The 1977 Code includes a table which designates various economic activities with either a "P" for permitted use, a "C" for conditional use, or a dash (indicating either inapplicability or presumably no decision yet on the activity). The 1977 Code designates an auto-body repair shop as a "permitted use," defined as a "use of land for which no conditional use permit is required." This simply means that if one desires to carry on a "permitted use" on one's land, obtaining permission is merely perfunctory and the County will ordinarily grant a permit without delay.

5. The 1985 Code requires the Stuckers to satisfy five "absolute policies" before receiving permission to operate the auto-body repair shop: (1) Environmental Criteria; (2) Critical Areas; (3) Compatibility Assessment; (4) Services; and (5) Development and Design.

units, 1000 multi-family units and 30 acres of commercial.

–Landmark Plaza and Community, 252 multi-family units and 30.5 acres of commercial.

–Pinebrook, a Planned Unit Development consisting of 900 single family units, 1250 multi-family units and 57 acres of commercial.

–Silver Springs East, consisting of 300 single-family units, 260 multi-family units including 10.5 acres of commercial.

–Silver Summit Community consisting of 363 single family units, 558 multi-family units and 5 acres commercial.

–Spring Creek consisting of 416 single family and 200 multi-family units.

Developers of properties which have been "grandfathered" have an option to either: (1) continue to develop under the provisions of the [1977] Code, or (2) to develop under the provisions of the [1985] Code. When a project developer elects to proceed under the [1977] Code he will be permitted to continue development under the provisions of said Code. At any time during the development approval process, the project developer may also elect to change over to the [1985] Code for further development approvals within a "Master Planned" or "grandfathered" project. Once a project developer elects to change over to the [1985] Code, all future development within a "Master Planned" or "grandfathered" project must proceed under the [1985] Code.

In the event of the sale of all or any part of the Grandfathered Property by the project developer, the purchaser also has the option to develop such part of the property purchased under the [1977] Code or under the [1985] Code. The election by such a purchaser to proceed with development under the [1977] Code or the [1985] Code for the property purchased will not affect any election made by the seller for the remainder of the Grandfathered Property. Likewise, any such election made by the seller with respect to the remainder of the Grandfathered Property will not affect the election by such a purchaser for the purchaser's portion of the Grandfathered Property.

(Emphasis added.)

The Stuckers contend that the underlined portions of the grandfather provision above apply to the Highland Estates Subdivision and Lot 225, thereby giving them the right to develop Lot 225 under the 1977 Code. To resolve this issue, we must construe the language of these provisions to determine if the Stuckers' position is correct. Following accepted rules of statutory construction, "we first examine the statute's plain language and resort to other methods of statutory interpretation only if the language is ambiguous." *State v. Masciantonio,* 850 P.2d 492, 493 (Utah App.1993); *accord State v. Vigil,* 842 P.2d 843, 845 (Utah 1992). Additionally, "we should construe statutory provisions so as to give full effect to all their terms, where possible." *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *accord Luckau v. Board of Review of the Indus. Comm'n,* 840 P.2d 811, 815 (Utah App.1992), *cert. denied,* 853 P.2d 897 (Utah 1993). In the present case, we begin our analysis by attempting to interpret the grandfather provision according to its plain meaning.

There are two phrases in the Statement of Intent that are key to correctly interpreting the grandfather provision. First, the County expresses its intent to allow continued development under the 1977 Code of any property where *"development had been initiated through master plan or zone change approval prior to the effective date of the [1985 Code]."* (Emphasis added.) This language establishes a threshold test for property developers desiring to seek refuge under the grandfather provision—"development" must have been initiated before the 1985 Code took effect, through either "master plan" or "zone change" approval. The 1985 Code defines "development" as "any new construction or change in use requiring a permit." The Stuckers argue that "development" was initiated in the Highland Estates Subdivision, albeit not on Lot 225, before the enactment of the 1985 Code and thus the grandfather provision applies to all lots within that subdivision. On the other hand, the County asserts that the grandfather provision does not

encompass Lot 225 because no "development" was initiated on that specific lot before enactment of the 1985 Code.

Some courts have recognized that the filing of a subdivision plat gives a vested right to individual lot owners as to the lots' size. *See, e.g., Robinson v. Lintz,* 101 Ariz. 448, 420 P.2d 923, 927 (1966) (lots become "legally established" when plat is properly recorded); *Friends of the Law v. King County,* 63 Wash.App. 650, 821 P.2d 539, 541–42 (1991) (filing of completed application for preliminary plat approval gives lot owner vested right as to size of lot), *review denied,* 119 Wash.2d 1006, 832 P.2d 488 (1992). Individual lot owners within an approved subdivision, however, generally have no vested right to build under a given zoning ordinance until the municipality has issued a building permit for that specific lot or the lot owner has incurred substantial expense in reliance on the current zoning ordinance. *See, e.g., Elam v. Albers,* 44 Colo.App. 281, 616 P.2d 168, 169–70 (1980) (uses permitted by particular zoning classification are not vested rights and subsequent zoning changes are binding on owners of property affected, except where owner had developed land in accordance with prior permitted use); *City of Lewiston v. Bergamo,* 119 Idaho 221, 225, 804 P.2d 1352, 1356 (App.1990) (landowner will be protected if, in reliance on permit or existing zoning, landowner made substantial expenditures or otherwise made commitment, to substantial disadvantage, before zoning was changed); *R.A. Vachon & Son, Inc. v. City of Concord,* 112 N.H. 107, 289 A.2d 646, 649 (1972) ("[E]ven final approval of a subdivision plot by the planning board under authority of [the statute] does not place the lots beyond the authority of zoning

changes.") (citing 3 Anderson, *American Law of Zoning* § 19.23 (1968)).

In the instant case, the grandfather provision does not clearly indicate whether the term "development" means new construction or a change in use within only part of a subdivision or on a single lot. We believe the Stuckers' position—that some development within a subdivision creates a safe harbor for all additional unimproved lots within that subdivision—is untenable. If we were to hold that some development within a subdivision creates a vested right for all subdivision lot owners to develop their lots at any future date under the zoning ordinance in place at the time the initial "development" in the subdivision occurred, we would eviscerate the power of municipalities to effectively change zoning practices to meet community needs and future growth. Accordingly, we hold that the Stuckers flunk the grandfather provision's threshold test because they failed to initiate "development" on Lot 225 before the 1985 Code replaced the 1977 Code.[6]

Unfortunately, our analysis cannot stop here. The 1985 Code lists, in the Statement of Intent, six, large, planned-unit-developments to which the County has given permission to continue development under either the 1977 or 1985 Codes. This exception granted by the County appears to cut against our reasoning above because it arguably gives the owners of undeveloped lots within those six named development projects a vested right to develop under either code, despite the failure to obtain a building permit or to initiate "development" before the 1985 Code took effect. The language in the Statement of Intent is troublesome because it leaves some room for doubt as to whether the

6. The grandfather provision also states that "development" must have been initiated before the 1985 Code was effective either through "master plan or zone change approval." Arguably, we could end our analysis at this point by holding that any "development" initiated in the Highland Estates Subdivision was not begun with master plan approval by the County. As the Highland Estates Subdivision was commenced in 1964, before the County had adopted a master plan, such a holding is plausible and would thus distinguish the Highland Estates Subdivision from the six, named, planned-unit-developments found in the grandfather provision. The record, however,

does not indicate whether the County retroactively gave approval to all developments commenced before the adoption of its master plan in 1977. Because this is an appeal from a summary judgment, "we review the facts in the light most favorable to the losing party." *ProMark Group, Inc. v. Harris Corp.,* 860 P.2d 964, 966 (Utah App.1993). Accordingly, we believe that it is reasonable to infer that the County retroactively gave its approval to the Highland Estates Subdivision. Therefore, we must construe the remaining language in the grandfather provision to decide the outcome.

County intended only these six named projects to be exempted or whether the list of six projects was merely illustrative.

The troublesome passage to which we refer states, "Examples of those 'grandfathered' properties *are currently identified as, but not limited to,* the following." (Emphasis added.) The Stuckers argue that despite not being specifically mentioned, the Highland Estates Subdivision is grandfathered under the phrase "but not limited to." This phrase, however, must be read in conjunction with the preceding phrase, "are currently identified as." Furthermore, both phrases must be read in the context of the prefatory statement of the 1985 Code that it will be amended from time to time.[7] We believe that given the language of the 1985 Code regarding periodic amendment and the fact that at all times relevant to this case those "grandfathered" properties included six specified developments, it is reasonable to construe the phrase, "are currently identified as, but not limited to," to mean that only those properties identified by the 1985 Code were grandfathered, subject to further amendment or specific identification by the County. That is, the County can use its police power, in the future and at its discretion, to add to the list of specifically identified properties that can pursue development either under the 1977 or 1985 Codes. To date, however, the County has not amended the list of specifically identified projects to include the Highland Estates Subdivision, of which Lot 225 is part. Thus, the Stuckers' lot does not fall within the grandfather provision of the 1985 Code. Accordingly, the Stuckers have no option to choose to develop their property under either the 1977 or 1985 Code. Rather, they are obliged to pursue development of Lot 225 under the provisions of the 1985 Code and its absolute policies.

Even if we found the language of the grandfather provision to be ambiguous and thus subject to extrinsic evidence, we would reach the same result. The County caused both codes to be drafted and adopted them, pursuant to statute; thus, its underlying intent in drafting and adopting them is controlling. The County's intent not to include the Highland Estates Subdivision in the grandfather provision is evidenced by the County's refusal to allow the Stuckers to proceed under the 1977 Code and its denial of the Stuckers' building permit.

## B. Neighborhood Veto Power Under 1985 Code

■ The Stuckers next argue that the Planning Commission's absolute policy of compatibility improperly delegates veto power to their neighbors who object to the Stuckers' proposed auto-body repair shop. The Utah Supreme Court has distinguished between neighborhood veto power and neighborhood participation in the application process for a conditional use permit as follows:

> While it is true that the consent of neighboring landowners may not be made a criterion for the issuance or denial [of] a conditional use permit, there is no impropriety in the solicitation of, or reliance upon, information which may be furnished by other landowners in the vicinity of the subject property at a public hearing.

*Thurston v. Cache County,* 626 P.2d 440, 445 (Utah 1981) (footnote omitted); *see also Davis County v. Clearfield City,* 756 P.2d 704, 711–12 (Utah App.), *cert. denied,* 765 P.2d 1278 (Utah 1988) (stating that public clamor may not be criterion for issuance or denial of conditional use permit).

In the present case, the Planning Commission designated the Stuckers' application as a request for a Class II permit because of public interest. Consistent with the 1985 Code's provisions, the Planning Commission held a public hearing at which the Stuckers' neighbors and other interested parties voiced their concern or support for the proposed auto-body repair shop. At the public hearing, the Planning Commission heard the following concerns and objections to the Stuckers' proposed project: 1) a concern that the

---

7. Both the 1977 and 1985 Codes state initially that they are subject to further amendment from time to time. This is consistent with Utah case law allowing city and county governments to reasonably regulate land use using their police powers. *E.g., Western Land Equities, Inc. v. City of Logan,* 617 P.2d 388, 390 (Utah 1980) ("It is established that an owner of property holds it subject to zoning ordinances enacted pursuant to a state's police power.").

project would become unsightly, 2) a concern with the implications of starting commercial activity within a residential area, 3) a concern that the access road is too narrow to accommodate ingress to and egress from a commercial activity, 4) a concern that the project does not fit with the proposed Snyderville Basin master plan map and would lower property values, 5) a concern with the use of volatile chemicals and paints in a residential area, 6) a concern that commercial projects do not serve as buffers for residential uses, 7) a concern that the High Valley Water Company is having trouble supplying water to all lots in Highland Estates, and 8) a concern, expressed by the Highland Estates Homeowners Board, that the majority of homeowners would like the area to remain residential. After listening to these concerns, as well as the Stuckers' presentation in favor of the project, the Planning Commission denied the Stuckers' request for a permit due to the incompatibility of the project with surrounding land uses.

At no time during the proceedings did the Planning Commission delegate veto power to the neighbors. Rather, it simply listened to the objections of the affected landowners and interested parties, and then rendered a decision. Therefore, because the Planning Commission ultimately made the decision to deny the permit, and because *Thurston* allows the Planning Commission to use information gathered from neighbors in making a decision, we hold that the 1985 Code's absolute policy on compatibility does not impermissibly grant veto power to the Stuckers' neighbors.

### C. Equitable Estoppel

■ Finally, the Stuckers assert that the County should be estopped from denying the building permit, based on a letter from Jack Willis, director of the Summit County Planning Office, dated May 24, 1989, to Jim Lynn, the Stuckers' predecessor in interest to Lot 225. In that letter, Mr. Willis stated that he *personally* did not support changing the zoning of Lot 225 from commercial to single family. The Stuckers argue that they purchased Lot 225 from Mr. Lynn in part because of Mr. Willis's letter, which they claim

assured them that Lot 225 could be developed commercially.

The Utah Supreme Court has stated that equitable estoppel applies only when "the county [has] committed an act or omission upon which the developer could rely in good faith in making substantial changes in position or incurring extensive expenses." *Utah County v. Young*, 615 P.2d 1265, 1267 (Utah 1980) (citing *Pasco County v. Tampa Dev. Corp.*, 364 So.2d 850 (Fla.App.1978)); *accord Town of Alta v. Ben Hame Corp.*, 836 P.2d 797, 803 (Utah App.1992).

■ While the Stuckers incurred expense by purchasing Lot 225, they do not identify, beyond mere purchase of the property, any substantial change in position or any extensive expenses incurred in reliance on the letter. The Utah cases discussing equitable estoppel in the context of zoning ordinances uniformly consider the mere purchase or actual ownership of land as inadequate to establish a substantial change in position or the incurrence of extensive expenses. Rather, something beyond mere ownership of the land is required before the doctrine of equitable estoppel will apply, and in most cases the doctrine will not apply absent exceptional circumstances. *See Utah County v. Baxter*, 635 P.2d 61, 65 (Utah 1981); *Young*, 615 P.2d at 1267; *Salt Lake County v. Kartchner*, 552 P.2d 136, 138–39 (Utah 1976); *Town of Alta*, 836 P.2d at 802–03; *see also R.A. Vachon & Son, Inc. v. City of Concord*, 112 N.H. 107, 289 A.2d 646, 649 (1972) (money spent for acquisition of property itself is properly excluded from consideration of whether property owner has obtained vested right by incurring liability or expense).

Furthermore, the letter from Mr. Willis is not the commission of an act by the County upon which the Stuckers could rely. By stating that he "personally" did not favor a zoning change, Mr. Willis clearly distanced himself from making a statement which expressed the opinion of or bound the entire Planning Commission. Accordingly, the County is not estopped from denying the Stuckers' requested building permit and the Stuckers cannot obtain relief under the theory of equitable estoppel.

## CONCLUSION

The Stuckers have no vested right to construct an auto-body repair shop on Lot 225. The 1977 Code is inapplicable because the Stuckers neither purchased Lot 225 nor applied for a building permit prior to the adoption of the 1985 Code. The grandfather provision of the 1985 Code likewise does not give the Stuckers a vested right to develop their lot under the 1977 Code because they failed to initiate "development" on Lot 225 before enactment of the 1985 Code and also because the Highland Estates Subdivision is not specifically named in the grandfather provision. Additionally, we believe that the Planning Commission appropriately utilized neighborhood input to make its decision and that the 1985 Code does not impermissibly grant veto power to the Stuckers' neighbors. Finally, the County is not estopped from denying the Stuckers' building permit request because the Stuckers have not shown any substantial change in position or the incurrence of extensive expenses in reliance on the commission of an act by the County. Therefore, we uphold the trial court's grant of summary judgment.

BILLINGS and DAVIS, JJ., concur.