HARTFORD LEASING CORPORATION,
Plaintiff and Appellant,

v.

STATE of Utah, Defendant and Appellee.

No. 930612–CA.

Court of Appeals of Utah.

Dec. 29, 1994.

Rehearing Denied Feb. 1, 1995.

Steven C. Tycksen, Murray, for appellant.

Jan Graham and Alan S. Bachman, Salt Lake City, for appellee.

Before DAVIS, GREENWOOD and ORME, JJ.

ORME, Associate Presiding Judge:

Plaintiff Hartford Leasing Corporation appeals the trial court's decision to grant, with prejudice, defendant State of Utah's Motion to Dismiss for Failure to Prosecute. We reverse and remand.

## FACTS

Events leading up to the legal dispute at issue here are of little relevance to our decision, and thus we focus on the procedural facts. The State of Utah leased office space in a building located in Moab, Utah, owned by Hartford Leasing. On June 22, 1988, Hartford filed a complaint against the State, alleging breach of the lease agreement after the State quit the premises and ceased paying rent.[1] The State filed a Motion for More Definite Statement on August 25, 1988, pursuant to Utah Rule of Civil Procedure 12(e). The trial court granted the motion on September 28, 1988, and called for an amended complaint. Hartford did not file an amended

complaint, although one was prepared by its attorney, Dale Gardiner.

Hartford filed for bankruptcy on December 1, 1988. On December 30, 1988, Gardiner filed a Notice of Withdrawal of Counsel and Notice of Bankruptcy, which was duly served on the State. Both notices were combined in a single document, which read as follows:

> Dale F. Gardiner, attorney at law, withdraws as counsel for the plaintiff in the above entitled action.
>
> NOTICE is also given that on December 1, 1988, Hartford Leasing Corporation filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Utah. Counsel for Hartford Leasing Corporation is George H. Speciale, Esq., 5 Triad Center # 585, Salt Lake City, Utah 84180.

Hartford's bankruptcy case was concluded on October 29, 1990.

After Gardiner's notice, no further documents were filed in the instant action until March 26, 1993, when the State filed a Motion to Dismiss for Lack of Prosecution. In support of its motion, the State contended that Hartford failed to take any action in the case over a four-and-one-half year period and had not filed an amended complaint, in response to the Motion for More Definite Statement, within the ten-day period required by Rule 12(e) of the Utah Rules of Civil Procedure. However, the State had not, at any time after receiving word of Gardiner's withdrawal, notified Hartford, in accordance with Rule 4–506(3) of the Utah Code of Judicial Administration, that it must retain new counsel. By the terms of Rule 4–506(3), such notice must be given "before opposing counsel can initiate further proceedings."

On April 12, 1993, in response to the State's motion to dismiss, Hartford's new attorney, Steven Tycksen, filed a Notice of Appearance of Counsel, a Request for Scheduling, and Objections to Defendant's Motion for Dismissal, which also included a request for oral argument. On June 8, 1993, Hart-

---

1. Three original defendants in this complaint, Rio Vista Oil Limited, LaSal Oil Company, and Dependable Janitorial Service, are not parties to this appeal, having been previously dismissed from the action.

ford filed a Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss and a Notice to Submit for Decision, which stated that "Plaintiff's Objection to Defendant's Motion for Dismissal ... is now at issue and ready for decision of the Court."

The trial court made three rulings related to the State's Motion to Dismiss. First, in its ruling issued June 21, 1993, the court granted the State's motion, finding that Hartford failed to move the case forward during the four-and-one-half year period since its initial filing. The court noted the State's failure to notify Hartford concerning the appointment of new counsel, but stated that this failure was remedied by giving Hartford adequate time to obtain new counsel and respond to the motion. Additionally, the court refused to accept Hartford's supplemental memorandum and thus did not consider the information contained therein.

Second, after receiving no objections to this decision, the trial court issued an Order of Dismissal for Lack of Prosecution with Prejudice on July 15. However, Hartford had submitted an objection to the June 21 ruling via facsimile, which was transmitted between 4:58 p.m. and 5:10 p.m. on July 15, but the order had already been filed when the transmission was received. In its objection, Hartford contended that the court should not have made its decision without hearing oral arguments, that dismissal with prejudice was inappropriate, that the court erred in considering the motion absent the State's compliance with Rule 4–506, and that the court erred in refusing to consider its supplemental memorandum.

Finally, on July 19, the court ruled on Hartford's objections by affirming its order to dismiss. It stated that Hartford's Notice to Submit for Decision waived its original request for oral argument and that supplemental memoranda are not permitted by Rule 4–501 of the Utah Code of Judicial Administration so that the court could not consider the additional information contained therein.

Hartford appeals.

## ISSUES

Although Hartford raises a number of issues, the thrust of Hartford's appeal is that the trial court abused its discretion by dismissing, for failure to prosecute, Hartford's complaint. We therefore consider only the following two issues: (1) whether the court abused its discretion in granting the State's Motion to Dismiss when the State had failed to first comply with the requirements of Rule 4–506(3) of the Code of Judicial Administration and (2) whether the court erred in its interpretation of Rule 4–501 when it refused to accept Hartford's supplemental memorandum.

## STANDARD OF REVIEW

■ In reviewing a trial court's decision to dismiss for failure to prosecute, we accord the trial court broad discretion and do not disturb its decision absent an abuse of discretion and a likelihood that an injustice has occurred. *Charlie Brown Constr. Co. v. Leisure Sports, Inc.,* 740 P.2d 1368, 1370 (Utah App.), *cert. denied,* 765 P.2d 1277 (Utah 1987). In determining whether the court abused its discretion, we "balance the need to expedite litigation and efficiently utilize judicial resources with the need to allow parties to have their day in court." *Meadow Fresh Farms, Inc. v. Utah State Univ.,* 813 P.2d 1216, 1219 (Utah App.1991). Of course, the goal of affording parties "an opportunity to be heard" is the essential purpose of the court system, and thus our system values this goal over that of judicial economy. *Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.,* 544 P.2d 876, 879 (Utah 1975).

■ A trial court's interpretation of a rule in the Utah Code of Judicial Administration presents a question of law reviewed for correctness. *Wells v. Wells,* 871 P.2d 1036, 1038 (Utah App.1994).

## DISMISSAL FOR FAILURE TO PROSECUTE

■ In our consideration of a trial court's dismissal for failure to prosecute, we look to factors besides the mere elapse of time since the case was filed. Both the Utah Supreme Court and this court have considered, where appropriate, at least five additional factors: (1) "the conduct of both par-

ties"; (2) the opportunity available to each party to move the case forward; (3) what each party has accomplished in moving the case forward;[2] (4) the difficulty or prejudice imposed on the opposing party by reason of the delay; and (5) "most important, whether injustice may result from the dismissal." *Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975). *Accord Country Meadows Convalescent Ctr. v. Department of Health*, 851 P.2d 1212, 1215 (Utah App.1993). *See K.L.C. Inc. v. McLean*, 656 P.2d 986, 988 (Utah 1982); *Utah Oil Co. v. Harris*, 565 P.2d 1135, 1137 (Utah 1977); *Meadow Fresh Farms, Inc. v. Utah State Univ.*, 813 P.2d 1216, 1219 (Utah App.1991). Application of these factors, to which we now turn, requires consideration of the " 'totality of the circumstances' " in order to determine " '[w]hether delay is a ground for the dismissal of an action.' "[3] *Country Meadows*, 851 P.2d at 1215 (quoting *Department of Social Servs. v. Romero*, 609 P.2d 1323, 1324 (Utah 1980)).

### A. Conduct, Opportunity and Accomplishments of Parties

#### 1. Effect of Bankruptcy Petition

Each party seeks refuge behind the pendency of the related bankruptcy proceeding:

Hartford points to it as explanation for why it did nothing in the instant case for at least two years out of the more than four-year period of inactivity; the State suggests the bankruptcy filing precluded it from giving Hartford notice to appoint counsel.

 The Bankruptcy Code does not offer complete shelter to either party as a means to escape their respective responsibilities in moving this case forward. *See Maxfield v. Rushton*, 779 P.2d 237, 241–42 (Utah App.) (Orme, J., concurring), *cert. denied*, 789 P.2d 33 (Utah 1989). Even assuming the State was prevented from filing the notice to appoint counsel by the automatic stay provision of 11 U.S.C. § 362(a) (1988), a proposition which·is questionable in any event,[4] this would not explain why the notice was not given during the two-and-one-half year period following termination of the bankruptcy case.

While Hartford's bankruptcy posture imposed financial hardship and procedural complexities that offer some rationale for its failure to move the case forward, its hands were not completely tied. As a bankruptcy debtor, it could have pursued this case either as a Chapter 11 debtor in possession or

2. We pause to note the obvious: What each party has done to move the case forward can only be evaluated in light of each party's responsibility concerning the case. ·Of course, the plaintiff, as the party initiating the lawsuit, has the primary responsibility to move the case forward. The defendant's responsibility is limited to responding timely to the action, expeditiously attending to discovery, and moving any counterclaim along. The defendant has no general responsibility to move *plaintiff's* action to judgment.

3. We note that in the course of our review, we do not consider the evidence contained in the supplemental memorandum. We are limited to the evidence properly before the trial court. *Adamson v. Brockbank*, 112 Utah 52, 78, 185 P.2d 264, 277 (1947); *Territorial Sav. & Loan Ass'n v. Baird*, 781 P.2d 452, 456 (Utah App.1989). In the instant case, the information contained in the supplemental memorandum was not before the trial court. In two separate rulings, issued on June 21 and July 19, the trial court stated that the supplemental memorandum was not permitted, and that it refused to consider the information contained therein. As hereinafter explained,

the trial court's ruling in this respect was correct.

4. So far as judicial proceedings are concerned, section 362 refers only to proceedings "against the debtor." 11 U.S.C. § 362(a)(1) (1988). *See, e.g., Nielsen v. Price*, 17 F.3d 1276, 1277 n. 2 (10th Cir.1994); *Victor Foods, Inc. v. Crossroads Economic Dev., Inc.*, 977 F.2d 1224, 1226–27 (8th Cir.1992) (per curiam) (debtor's bankruptcy did not toll statute of limitations because automatic stay applies to actions filed against debtor, not by debtor); *Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir. 1989) (defendant able to initiate motion to dismiss complaint brought by bankrupt plaintiff, notwithstanding automatic stay, because stay does not apply to actions brought by debtor); *Carley Capital Group v. Fireman's Fund Ins. Co.*, 889 F.2d 1126, 1127 (D.C.Cir.1989) (per curiam) (automatic stay inapplicable to actions brought by debtor that would benefit bankruptcy estate); *Rett White Motor Sales Co. v. Wells Fargo Bank*, 99 B.R. 12, 15 (Bankr.N.D.Cal.1989) ("[S]tay provisions are not designed to stay actions which have been commenced by the bankrupt party.").

through a trustee,[5] particularly where, as here, an outcome in its favor would have added assets to the bankruptcy estate. The bankruptcy trustee may hire, with court approval and "for a specified special purpose," an attorney to represent the bankrupt debtor in matters "in the best interest of the estate" but unrelated to the trustee's duties in estate administration. 11 U.S.C. § 327(e) (1988). *See Conticommodity Servs., Inc. v. Ragan,* 826 F.2d 600, 602 (7th Cir.1987) (in litigation commenced pre-bankruptcy, trustee became real party in interest and retention of counsel by trustee was within exclusive jurisdiction of bankruptcy court).

Therefore, pendency of the bankruptcy case does not completely excuse Hartford from taking action, nor does it excuse the State's failure to give the required notice to appoint counsel, at least for the period following the conclusion of the bankruptcy case.

## 2. Rule 4–506

 The State's failure to comply with the notice requirements regarding legal counsel, unambiguously imposed by the Utah Code of Judicial Administration, is at the heart of our analysis of the State's responsibility, conduct, and opportunity to move this case forward. We recognize that Hartford, as plaintiff, bears the initial burden of prosecuting its claim diligently. *Meadow Fresh Farms, Inc. v. Utah State Univ.,* 813 P.2d 1216, 1218 (Utah App.1991). The State's responsibility, as a defendant which has not asserted a claim for affirmative relief, is limited. *See supra* note 2. However, the requirement of Rule 4–506 presents precisely the type of requirement with which the State must comply in discharge of its responsibility as a defendant. The pertinent provisions of the rule state:

> When an attorney ... withdraws from the case or ceases to act as an attorney, *opposing counsel must notify, in writing, the unrepresented client* of his/her responsibility to retain another attorney or appear in person *before opposing counsel can initiate further proceedings* against the client. A copy of the written notice shall be filed with the court *and no further proceedings shall be held in the matter until 20 days have elapsed from the date of filing.*

Utah Code Jud. Admin. R4–506(3) (emphasis added). Given a plain reading of Rule 4–506, the State was precluded from filing its motion to dismiss without first giving the required notice. Nonetheless, it failed to give that notice before filing its motion to dismiss.

We are unpersuaded by the State's contention that it took Gardiner's notice to mean that Speciale had entered his appearance as counsel for Hartford in place of Gardiner, and thus no notice to appoint counsel was necessary. Examination of Gardiner's withdrawal of counsel and bankruptcy notice shows that its terms, when taken in context, are not ambiguous and indicate Speciale was Hartford's bankruptcy attorney and not Hartford's attorney in the instant action. Mention of Speciale's representation is in the same paragraph as the notice of bankruptcy and not part of the withdrawal of counsel paragraph that preceded it. The trial court correctly observed that the lack of an express notice of appearance should have indicated to the State that Hartford was without counsel in the instant action upon Gardiner's withdrawal.[6]

 The trial court found that "[g]iven the ambiguity [sic] in the notice of withdrawal and the absence of a notice of appearance by other counsel, the [State] should have

---

**5.** Under Chapter 11, a trustee is appointed "for cause" or "in the interests of creditors," 11 U.S.C. § 1104(a) (1988); otherwise, the debtor continues in possession. If there was no reason to appoint a trustee in Hartford's case, Hartford was a debtor in possession and was entitled, with limited exceptions not pertinent here, to all the powers with which trustees are invested. *See* 11 U.S.C. § 1107(a) (1988).

**6.** The State's contention that Speciale appeared to have replaced Gardiner as counsel for Hartford is untenable for other reasons. Negotiations over occupation of the building between Speciale and the State's counsel are not, as suggested by the State, evidence that Speciale was counsel for Hartford in this action. The building was the primary asset of the bankruptcy estate, and there was no reason to assume Speciale was conducting anything but bankruptcy business on behalf of the estate. Additionally, it would be curious for one attorney to purport to enter an appearance for another without making some representation of authority to do so.

given a notice under Rule 4–506." However, the trial court erred when it went on to excuse the State's failure to send Hartford the required notice. The court determined that "the remedy for such a failure is not necessarily denial of the motion. The remedy is to grant Hartford sufficient time after a pleading is filed in violation of Rule 4–506 to obtain counsel and adequately respond. It is evident that Hartford has had that opportunity." The rule's provisions, however, offer no room for such discretion to excuse compliance: "opposing counsel *must* notify . . . *before* opposing counsel can initiate further proceedings." Utah Code Jud. Admin. R4–506(3) (emphasis added).

 In addition, the trial court failed to consider the particular importance of giving the required notice to Hartford, a corporation, *prior to* the State's filing of its motion. Unlike the individual litigant who may, by the terms of Rule 4–506, either appoint new counsel or proceed pro se, Hartford's status as a corporation precludes self-representation because corporations are artificial entities that are not allowed to represent themselves in court. *See* Utah Code Ann. § 78–51–40 (1992); *Tracy–Burke Assocs. v. Department of Employment Sec.*, 699 P.2d 687, 688 (Utah 1985) (per curiam); *Tuttle v. Hi–Land Dairyman's Ass'n*, 10 Utah 2d 195, 198, 350 P.2d 616, 618 (Utah 1960). Until the required notice was given, Hartford could afford to be somewhat complacent, knowing that the State could do nothing until it had first given Hartford the required notice to appoint new counsel. Until such notice was

given, it was as though the State acquiesced in Hartford's failure to move the action along.[7]

### B. Prejudice

In its ruling on the motion to dismiss, the trial court indicated that it "discounts some of those claims [of prejudice] because most of the defendants have had the opportunity and the incentive to gather much of the same evidence in related matters." We agree with the court's analysis of this factor, and thus will not belabor it.

### C. Injustice

 We now consider whether Hartford would suffer injustice by not having its day in court, giving due regard to the State's failure to give the notice required by Rule 4–506. "Dismissal with prejudice . . . is a harsh and permanent remedy when it precludes a presentation of a plaintiff's claims on their merits." *Bonneville Tower Condominium Mgt. Comm. v. Thompson Michie Assocs., Inc.*, 728 P.2d 1017, 1020 (Utah 1986). *See Reliable Furniture Co. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 16 Utah 2d 211, 216, 398 P.2d 685, 688 (1965) (pretrial dismissal is "a drastic action . . . used sparingly and with great caution"). While Hartford has hardly been blameless over the period of more than four years since it filed its complaint, the State's failure to give notice to appoint counsel before filing its motion weighs heavily—indeed, conclusively—in Hartford's favor. Proper notice to appoint

---

7. We also wish to note that the effect of the State's failure to give the required notice to appoint counsel does not, as Hartford suggests, deprive the trial court of jurisdiction. Courts lack actual jurisdiction by reason of defects in notice only in limited circumstances. *See, e.g., Garcia v. Garcia*, 712 P.2d 288, 290 (Utah 1986) (per curiam) (court lacks personal jurisdiction if service of process requirements under Rule 4 of the Utah Rules of Civil Procedure are not met); *Lamarr v. State Dep't of Transp.*, 828 P.2d 535, 542 (Utah App.1992) (compliance with notice provisions of Utah Code Ann. § 63–30–12 (1993) required to confer subject matter jurisdiction over claim against state agency). In contrast, failure to adhere to more routine notice requirements does not deprive the court of jurisdiction. *See, e.g., Sovereen v. Meadows*, 595 P.2d 852, 854 n. 3 (Utah 1979) (defective notice to quit in an

unlawful detainer action results in failure to state a claim, but not lack of subject matter jurisdiction); *In re Clinton*, 762 P.2d 1381, 1386–87 (Colo.1988) (failure to comply with statutory requirement for appointment of counsel in mental health proceedings does not affect personal jurisdiction). Once a court properly acquires jurisdiction, it is not lost through subsequent procedural events. *Secrest v. Simonet*, 708 P.2d 803, 807 (Colo.1985); *State ex rel. Owens v. Hodge*, 230 Kan. 804, 641 P.2d 399, 405–06 (1982). In the instant case, the action had been filed, the defendants served, and the trial court already had both subject matter and personal jurisdiction. The State's failure to send notice to appoint counsel under Rule 4–506 does not destroy the court's jurisdiction—it merely precludes the State from doing anything in the case until the requirement has been met.

new counsel under Rule 4–506 is critically important, and would have let Hartford know that the State was tired of waiting and intended to take further action on the claim against it. Such notice would likely have spurred Hartford to action, as demonstrated by the plethora of legal documents filed by Tycksen concurrent with his Notice of Appearance and in response to the State's Motion to Dismiss.[8] It would indeed be unjust to deprive Hartford of its day in court given the State's failure to provide the required notice.

### D. Summary

The State's failure to give notice to appoint counsel prior to filing its motion to dismiss, coupled with the other factors ˙ discussed above, rendered it improper for the trial court to dismiss Hartford's action, notwithstanding the inordinate period of inactivity that preceded the State's motion.

### SUPPLEMENTAL REPLY MEMORANDUM

■ Hartford contends that the plain language of Rule 4–501 of the Utah Code of Judicial Administration allows supplemental memoranda to be submitted to the trial court, and the court erred in not accepting its second memorandum. Although we need not reach this issue given our above disposition, the question is apparently one of some controversy among the bar, has been ably briefed by counsel, and is not the kind of issue that often arises on appeal. Thus, we offer our opinion for what it may be worth.

We disagree with Hartford and see no error in the court's handling of this question. Rule 4–501 states, in part, as follows:

(a) Motion and supporting memoranda. All motions, except uncontested or ex-parte matters, shall be accompanied by *a memorandum of points and authorities....* *Memoranda supporting or opposing a mo-*

*tion shall not exceed ten pages in length* exclusive of the "statement of material facts" as provided in paragraph (2), except as waived by order of the court on ex-parte application....

(b) Memorandum in opposition to motion. The responding party shall file and serve upon all parties within ten days after service of a motion, *a memorandum in opposition* to the motion, and all supporting documentation.

(c) Reply memorandum. The moving party may serve and file *a reply memorandum* within five days after service of the responding party's memorandum.

Utah Code Jud. Admin. R4–501(1)(a)–(c) (emphasis added).

■ In interpreting a statute or rule, we examine its " 'plain language and resort to other methods ... only if the language is ambiguous.' " *Stucker v. Summit County,* 870 P.2d 283, 287 (Utah App.) (quoting *State v. Masciantonio,* 850 P.2d 492, 493 (Utah App.1993)), *cert. denied,* 879 P.2d 266 (Utah 1994). Here, it is clear that the plural "memoranda" which appears in the rule and on which Hartford relies, refers to *all* memoranda received by the court—from all parties that either oppose or support any motion— and does not mean that *each* party may submit more than one memorandum. We agree with the State's contention that the ten-page limit imposed by Rule 4–501(1)(a) would be completely ineffective if a party could freely file supplemental memoranda. Subsection (a) and subsection (b) explicitly provide for only a single *memorandum* to be filed in support of or opposition to a particular motion. Indeed, the only additional memorandum allowed is the reply memorandum provided for by subsection (c), but that option is limited to the *moving* party. In the case at hand, Hartford is the non-moving party.

---

8. Hartford responded to the Motion to Dismiss two weeks after it was filed. Had the State first filed a notice to appoint counsel, Hartford would obviously have had an opportunity to reactivate its claim before the elapse of the 20–day period prescribed by Rule 4–506(3), rendering any intended motion to dismiss for failure to prosecute

of academic interest only. *Cf. Johnson v. Firebrand, Inc.* 571 P.2d 1368, 1369–70 (Utah 1977) (finding court had abused its discretion in dismissing case for failure to prosecute when party's motion to dismiss filed concurrently with its answer).

▮ Furthermore, "[a] trial judge is accorded broad discretion in determining how a [case] shall proceed in his or her courtroom." *University of Utah v. Industrial Comm'n*, 736 P.2d 630, 633 (Utah 1987). Accordingly, the trial court in this case was well within its discretion in refusing to accept a supplemental memorandum that was submitted without prior invitation and outside the bounds of duly promulgated procedural rules.[9]

## CONCLUSION

Given the totality of circumstances, the trial court abused its discretion in granting the State's Motion to Dismiss for Lack of Prosecution. However, the trial court did not err in refusing to accept Hartford's supplemental memorandum in opposition to this motion. We reverse and remand to the trial court for such further proceedings as may now be appropriate.

GREENWOOD, J., concurs.

DAVIS, Judge (concurring in the result):

I concur in the result reached by the court because the mandatory language of Rule 4–506 makes notification of the unrepresented party an express precondition to initiation of further proceedings against that party. The rule mandates notice prior to *initiation* of further proceedings, and the proceedings may be *held* twenty days after the date of filing the notice. The rule does not require a twenty-day waiting period between the filing of the notice and *initiation* of further proceedings. Thus, under the terms of the rule, the State could have filed the notice required under Rule 4–506 immediately prior to its March 26, 1993 motion to dismiss; and, under the rule, the court would not be in a position to hold proceedings on the motion until twenty days after the filing of the notice—on or about April 15, 1993. On April 12, 1993, and June 8, 1993, plaintiff filed responsive pleadings, and the court made rulings on June 21, July 15, and July 19, 1993, all approximately ninety days after the State filed its motion to dismiss without having first given notice as required by Rule 4–506.

But for the mandatory language contained in Rule 4–506, I believe the trial court's analysis of this issue would have been entirely correct, as any purpose to be served by the provisions of Rule 4–506 was served by the lapse of time between the initiation of proceedings by the State and the conduct of those proceedings by the court. For the foregoing reasons, I also disagree with the court's analysis that plaintiff suffered some sort of injustice as a result of the State's failure to perform an act that, under the facts of this case, was hardly more than ministerial. The record does not suggest that plaintiff relied upon or in any way changed its position in reliance on the State's failure to file notice under the rule or that had plaintiff reactivated the case in response to a Rule 4–506 notice, any of the dismissal factors set out on pages 697–98 of the court's opinion would have been resolved in plaintiff's favor. While the State may have been remiss in failing to comply with the provisions of Rule 4–506, it can hardly be suggested that the *motion to dismiss did not let plaintiff know* that the State was tired of waiting and plaintiff was, in fact, spurred to action.

---

9. Nothing prevents the trial court from receiving additional memoranda if it wishes to do so. We merely hold that Hartford was not entitled to submit the additional memorandum as a matter of right. Hartford may have been more successful in gaining acceptance of its supplemental memorandum if it had first sought leave of court. Counsel could have filed a motion, stating the reasons the information was not included in the original memorandum, and requested permission to submit an additional memorandum. *Cf.* Utah R.Civ.P. 15(d) (motion to allow supplemental pleadings, at discretion of court); Utah R.Civ.P. 60(b)(1), (2) (motion for relief from judgment for excusable neglect or newly discovered evidence); Utah Code Jud. Admin. R4–501(1)(a) (over-length memorandum may be submitted with prior leave of court on ex parte application).