2008 UT App 372

**PDC CONSULTING, INC., Plaintiff and Appellant,**

v.

**Jared PORTER, Defendant and Appellee.**

No. 20060920–CA.

Court of Appeals of Utah.

Oct. 23, 2008.

---

Ronald Ady, Salt Lake City, for Appellant.

Matthew H. Raty, Sandy, for Appellee.

Before Judges GREENWOOD, McHUGH, and ORME.

## MEMORANDUM DECISION

McHUGH, Judge:

¶ 1 Appellant PDC Consulting, Inc. (PDC) appeals the trial court's September 6, 2006 order dismissing PDC's complaint with prejudice. PDC argues that the trial court exceeded its discretion when it dismissed the claims against Appellee Jared Porter. We affirm the trial court's order dismissing the action.

¶ 2 PDC filed its complaint against Porter—a former employee—on April 6, 2001, and the parties executed a settlement agreement shortly thereafter. Two years later, Porter filed a motion to enforce the settlement, and PDC subsequently filed a motion to have the court set aside that settlement agreement. Finding that there were genuine issues of material fact in dispute, the trial court denied both motions in a ruling entered on November 3, 2003.[1] A year later, in November 2004, the trial court held an order to show cause hearing, after which it ordered that discovery on the issue of whether the settlement agreement should be set aside be completed within ninety days. The parties later stipulated to extend discovery an additional sixty days, until April 30, 2005.

¶ 3 On April 4, 2006, the trial court held another order to show cause hearing, during which it ordered that PDC submit a new scheduling order or a certificate of readiness for trial by April 30, 2006.[2] PDC filed a certificate of readiness for trial on April 28, 2006, and on May 8, 2006, Porter filed both an objection to PDC's certificate of readiness and a motion to dismiss. PDC did not oppose Porter's motion until August 10, 2006, at which time it filed a motion to strike both Porter's objection to PDC's certificate of readiness and his motion to dismiss. That same day, the trial court held oral argument and ordered that the action be dismissed. The dismissal was memorialized in the court's September 6, 2006 order, which PDC challenges in this appeal.

¶ 4 The trial court dismissed PDC's case on three grounds: (1) PDC "failed to prosecute the case," (2) PDC "failed to timely renew its denied motion to set aside the parties' April 15, 2001 settlement agreement within the dates and extensions given by [the] court and opposing counsel," and (3) PDC "failed to timely oppose [Porter]'s motion to dismiss." Because the trial court's first and second grounds for dismissal are closely interrelated, we will analyze both grounds within the context of PDC's failure to prosecute its case.[3]

¶ 5 "[We] do not disturb [a trial court's order of dismissal for failure to prosecute] absent an abuse of discretion and a likelihood that an injustice occurred." *Hartford Leasing Corp. v. State*, 888 P.2d 694, 697 (Utah Ct.App.1994); *see also Charlie Brown Constr. Co. v. Leisure Sports Inc.*, 740 P.2d 1368, 1370 (Utah Ct.App.1987) ("This Court will not interfere with [a trial court's] decision [to dismiss for failure to prosecute] unless it clearly appears that the court has abused its discretion and that there is a likelihood an injustice has been wrought." (citing *Department of Soc. Servs. v. Romero*,

---

1. Judge Lynn Davis originally presided over these proceedings and entered the November 3, 2003 ruling in an order dated November 26, 2003; Judge Derek Pullan replaced Judge Davis after entry of the November 26, 2003 order.

2. Although PDC disagrees, we defer to the trial court's own determination that it erroneously thought that the parties' stipulated extension was still in effect and set to expire on April 30, 2006.

The extension had actually expired a year earlier, on April 30, 2005.

3. Even though we need not separately address the trial court's third reason for dismissing PDC's complaint, we agree that PDC did not timely oppose Porter's motion to dismiss. *See* Utah R. Civ. P. 7(c)(1) (requiring the party who opposes a motion to do so within ten days).

609 P.2d 1323, 1324 (Utah 1980))). Under rule 41 of the Utah Rules of Civil Procedure, "a defendant may move for dismissal of an action ... against him" where "the plaintiff [fails] to prosecute." Utah R. Civ. P. 41(b). In other words, it is well within a trial court's discretion to dismiss a case under rule 41(b) when "a party fails to move forward according to the rules and the directions of the court, without justifiable excuse." *Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975) (citing Utah R. Civ. P. 37; *Maxfield v. Fishler*, 538 P.2d 1323, 1324–25 (Utah 1975)).

■ ¶ 6 Utah appellate courts analyze whether a case was properly dismissed for failure to prosecute using the following five factors (the *Westinghouse* factors):

(1) the conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each party has done to move the case forward; (4) the amount of difficulty or prejudice that may have been caused to the other side; and (5) "most important, whether injustice may result from the dismissal."

*Meadow Fresh Farms, Inc. v. Utah State Univ. Dep't of Agric. & Applied Sci.*, 813 P.2d 1216, 1219 (Utah Ct.App.1991) (quoting *Westinghouse*, 544 P.2d at 879). We agree with Porter that "there is ample evidence in the record" supporting the trial court's order to dismiss in light of these five factors.

■ ¶ 7 With respect to the first three *Westinghouse* factors, we consider the parties' conduct, what they had the opportunity to do, and what was actually done to move the case forward. PDC was told early in this litigation what it needed to do if it wished to litigate the allegations of its complaint on the merits. In 2001, the trial court indicated, and PDC agreed, that it was PDC's burden to set aside the settlement agreement if it wished to resume prosecution of the matter:

[PDC's Counsel]: Well, but at the time that we signed this the fraudulent inducement, then the agreement can't operate.

The [Court]: All right. *But you need to make a motion then to set aside the settlement agreement—*

[PDC's Counsel]: *Correct.*

The [Court]:—based on his fraud. Is that correct? I would assume.

[PDC's Counsel]: I would think we do, sir. Yes.

(Emphasis added.) Later, at that same hearing, the trial court discussed the effects of the settlement agreement with Porter's counsel:

[Porter's Counsel]: Well, the issue is we want you to order him to dismiss as he agreed to do in the settlement agreement.

The [Court]: Then you need to move to enforce it then.

[Porter's Counsel]: To file a motion?

The [Court]: Un-huh (affirmative).

[Porter's Counsel]: Okay.

¶ 8 For two years, neither party did anything to invalidate or to enforce the settlement agreement. Indeed, it was not until after Porter filed his motion to enforce the agreement in 2003 that PDC finally filed a motion to have the agreement set aside. In its November 2003 ruling on those motions, the trial court held "that genuine issues of material fact exist[ed]" regarding "the parties' compliance or non-compliance with" their executed settlement agreement. The parties, however, again did nothing to resolve this matter. Indeed, a full year later the trial court issued an order to show cause why the case should not be dismissed for failure to prosecute and, after the hearing, ordered discovery on the enforceability of the settlement agreement "to be complete[d] within 90 days." Again, PDC did nothing to set the settlement agreement aside, and another year passed before the trial court held a second order to show cause hearing in 2006.

■ ¶ 9 PDC argues on appeal that "the only delay at issue before the trial court on August 10, 2006 was the eleven months of delay accruing since the expiration of the April 30, 2005 discovery cut-off." [4] Accord-

---

4. PDC claims that the trial court only considered the delay between November 30, 2004, and April 4, 2006. Even if this is true, we note that the time elapsing between November 30, 2004, and

April 4, 2006, is actually just over sixteen months. Curiously, PDC insists that the delay consisted of only eleven months because five

ing to PDC, any delay prior to the trial court's November 30, 2004 order was not considered at the order to show cause hearing on April 4, 2006. Instead, PDC contends that the only delay relied upon by the trial court and thus relevant on appeal is that which accrued from November 30, 2004, until April 4, 2006. PDC, however, cites no authority which would limit the trial court's consideration to only some of the periods when nothing was done to advance this case. Furthermore, the court's August 10, 2006 ruling from the bench expressly discussed time lapses prior to April 30, 2005,[5] and we likewise consider the lack of diligence in prosecuting this matter from its inception. The record leaves no doubt that PDC had the opportunity to move the case forward but failed to do so.

■ ¶ 10 PDC also argues that "under the terms of the November 26, 2003 order both parties were equally charged with prosecuting their respective claims regarding the April 15, 2001 agreement" but "[n]either party moved the case forward in the sixteen months from November 30, 2004 to April 4, 2006." "Although inaction on the part of a defendant may contribute to the justifiability of a plaintiff's excuse for delay, the duty to prosecute is a duty of due diligence imposed on a plaintiff, not on a defendant." *Country Meadows Convalescent Ctr. v. Utah Dep't of Health*, 851 P.2d 1212, 1216 (Utah Ct.App. 1993) (citing *Meadow Fresh Farms, Inc.*, 813

P.2d at 1218). PDC could not proceed with litigation so long as the settlement agreement remained effective.[6] Consequently, PDC needed to invalidate that agreement to move its case forward. In contrast, Porter had no interest in disturbing the status quo—as long as the settlement agreement remained in effect, PDC could not pursue its underlying lawsuit against Porter. As the plaintiff, PDC did not fulfill its duty to move its case forward,[7] nor can it point to anything Porter did or failed to do that contributed to PDC's own delays.[8] *See Country Meadows Convalescent Ctr.*, 851 P.2d at 1216.

¶ 11 We likewise are unpersuaded by PDC's argument that its prosecution of the case was somehow hampered by Porter's failure to file his motion to dismiss earlier. PDC was always able to compel discovery, if necessary; retain experts; and request an evidentiary hearing pursuant to the trial court's November 26, 2003 ruling and explicit instructions:

> It is this Court's opinion that a lengthy evidentiary hearing is probably implicated, that experts would need to be employed, and that each party might need to seek new legal counsel. In light of this opinion, the Court invites the parties to seriously reconsider the proposed resolution of the case.

■ ¶ 12 The fourth and fifth *Westinghouse* factors, prejudice and injustice, like-

---

months of the time period were designated for discovery.

5. As part of the trial court's August 10, 2006 ruling, the court quoted the previous November 3, 2003 ruling: "This case has been inactive for over two years, even though [PDC] claims that material breaches of the settlement agreement by [Porter] occurred as early as June and July of 2001.[PDC] has offered no explanation for this delay."

6. PDC also claims the trial court concluded that Porter's failure to comply with the terms of the settlement agreement rendered it unenforceable. We disagree with PDC's characterization of the court's November 27, 2003 order. The trial court found, in its November 3, 2003 ruling, that there were disputed issues of material fact regarding the parties' compliance with the settlement agreement, which rendered the grant of summary judgment inappropriate.

7. PDC asserts that it had "moved the case toward a conclusion." As examples, it points to a two-day deposition of Porter, the copying of Porter's hard drive, and the filing of affidavits "specifying the testimony to be proffered by [its] witnesses." We note, however, that these actions occurred in 2001. If PDC was in fact finished with discovery at that point—as implied in PDC's brief and stated in its certificate of readiness for trial—there was no reason to allow another year to pass without challenging the settlement agreement.

8. PDC also contends that Porter "[wa]s stonewalling" by not providing the disclosures promised in the parties' settlement agreement and was therefore impeding PDC's ability to conduct further discovery. Even assuming this assertion were true, the alleged stonewalling and discovery obstruction occurred in June of 2001, yet nothing was done to compel discovery or set a hearing on the validity of the agreement until 2004.

wise support the trial court's dismissal. *See Meadow Fresh Farms, Inc. v. Utah State Univ. Dep't of Agric. & Applied Sci.*, 813 P.2d 1216, 1219 (Utah Ct.App.1991). First, we do not agree with PDC that "the only prejudice that accrued to Porter as a result of the delay is prejudice which Porter imposed upon himself." While the prejudice to Porter may not be overwhelming, PDC's failure to prosecute resulted in Porter remaining a named defendant in a pending lawsuit, and his laptop and files became obsolete while they were in PDC's possession. *Cf. Rohan v. Boseman*, 2002 UT App 109, ¶ 31, 46 P.3d 753 ("[N]ot granting the dismissal would have prejudiced the [defendant]s because they incurred costs....").

¶ 13 Second, PDC argues that because it can no longer challenge the settlement agreement or pursue the underlying lawsuit against Porter, injustice will result from dismissal of this case. However, "we conclude that [PDC] had more than ample opportunity" to challenge the agreement on the basis of Porter's alleged breaches, fraudulent conduct, or both "and simply failed to do so." *See Maxfield v. Rushton*, 779 P.2d 237, 240 (Utah Ct.App.1989) (rejecting claim of injustice where plaintiff "had more than ample opportunity to prove his asserted interest and simply failed to do so," and determining that "[s]uch nonaction is inexcusable"); *accord Rohan*, 2002 UT App 109, ¶ 32, 46 P.3d 753. We affirm the trial court's conclusion that such inaction, in combination with PDC's other dilatory conduct, was inexcusable. *See generally Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 878–79 (Utah 1975) ("[T]he trial court should have a reasonable latitude of discretion in dismissing for failure to prosecute if a party fails to move forward according to the rules and the directions of the court, *without justifiable excuse*." (footnote omitted) (emphasis added)).

¶ 14 Finally, we reject PDC's argument that the filing of the certificate of readiness rendered its failure to prosecute moot. The trial court had discretion to dismiss the case under rule 41(b) on its own motion, *see* Utah R. Civ. P. 41(b); *see also Brasher Motor & Fin. Co. v. Brown*, 23 Utah 2d 247, 461 P.2d 464, 464–65 (1969) ("In dismissing an action for want of prosecution, the court may proceed under the statute, or it may, *of its own motion*, take action to that end." (internal quotation marks omitted)), and we see nothing in its prior rulings that would foreclose such authority. Moreover, PDC's certificate of readiness did not erase its prior course of dilatory conduct upon which the trial court based its dismissal. *See generally Charlie Brown Constr. Co. v. Leisure Sports Inc.*, 740 P.2d 1368, 1370 (Utah Ct.App.1987) ("'The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962))). Particularly where the order allowing PDC to file a certificate of readiness was based on the trial court's later-acknowledged confusion about the discovery cut-off date, we see no abuse of discretion in dismissing this action for failure to prosecute.

¶ 15 In applying the five *Westinghouse* factors under the totality of the circumstances here, *see generally Country Meadows Convalescent Ctr. v. Utah Dep't of Health*, 851 P.2d 1212, 1215 (Utah Ct.App. 1993), we hold that the trial court did not exceed its discretion in dismissing PDC's complaint with prejudice.

¶ 16 Affirmed.

¶ 17 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.