2011 UT App 418

**Dennis CHEEK, Plaintiff and Appellant,**

v.

**CLAY BULLOCH CONSTRUCTION, INC., a Utah corporation, and Clay Bulloch, an individual, Defendants and Appellees.**

**No. 20100479–CA.**

Court of Appeals of Utah.

Dec. 8, 2011.

Fifth District, Cedar City Department,

030500447; The Honorable Paul D. Lyman.[1]

Kay L. McIff, Richfield, for Appellant.

V. Lowry Snow, Joshua R. Forest, and J. David Westwood, St. George, for Appellees.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 We are asked to reverse a dismissal for failure to prosecute. The dispute between plaintiff Dennis Cheek and defendants Clay Bulloch Construction, Inc. and Clay Bulloch (collectively, Bulloch) arose over alleged breaches of a construction contract in 2003. Cheek's claims of breach were twofold: first, that Bulloch erected the building partly on another's property, and second, that Bulloch defectively constructed the building. Bulloch counterclaimed, seeking to foreclose its mechanic's lien on the property and also claiming breach of contract and unjust enrichment for Cheek's failure to pay all amounts allegedly due to Bulloch.

¶ 2 Over the next six-and-a-half years, some initial discovery was done, followed by several years of unproductive correspondence between the parties' counsel. In its dismissal ruling, the trial court identified in detail what this communication and discovery entailed. Pertinent to this appeal was a relatively productive discovery period lasting from June 2003, when Cheek filed his complaint, through January 2005, followed by very little progress, at least as documented in the court's file, for the next five years.

¶ 3 At the beginning of this five-year period, in March 2005, the trial court asked Cheek to prepare a scheduling order, which Cheek—then represented by counsel who later withdrew—failed to do even after the court reminded Cheek of his responsibility in both June and November of that same year. In April 2006, the parties agreed to submit a discovery plan to the court, which also never happened. In July and August of 2006,

Cheek's new counsel attempted to contact Bulloch's attorney several times with no success. After these failed attempts, Cheek's counsel began discussing a possible settlement of the case with Bulloch's insurance company.

¶ 4 Cheek's counsel's communication with the insurance company and with Bulloch's counsel continued throughout 2007 and 2008. In October 2008, Cheek's counsel mailed a motion for a scheduling and case management conference to Bulloch's counsel. However, this motion was never filed with the court, and the parties never followed through on it. Counsel for the parties then agreed to meet in December 2008, but the meeting was subsequently canceled.

¶ 5 Nothing else of significance happened in this case until November 2009, when, at the instance of Cheek's counsel, the attorneys for the parties met and inspected the property. They discussed a plan for proceeding and agreed to communicate again in a few weeks. In light of these developments, Cheek's counsel was surprised when, in December 2009, Bulloch's counsel informed him during a phone call of his intention to move for dismissal for failure to prosecute. Bulloch's counsel followed up his phone call with a letter repeating this intention. On January 7, 2010, Cheek filed a motion for a scheduling conference. Bulloch filed its motion to dismiss eight days later. The court granted the dismissal motion, and Cheek appeals the ruling.

¶ 6 Cheek argues for a standard of review that would essentially allow this court to review the trial court's decision de novo. However, "[i]n reviewing a trial court's decision to dismiss for failure to prosecute, we accord the trial court broad discretion and do not disturb its decision absent an abuse of discretion and a likelihood that an injustice has occurred." *Hartford Leasing Corp. v. State*, 888 P.2d 694, 697 (Utah Ct.App.1994), *cert. denied*, 899 P.2d 1231 (Utah 1995). *See also Charlie Brown Constr. Co. v. Leisure*

---

1. Judge Lyman, a Sixth District juvenile court judge, was specially assigned to this case. *See* Utah Code Ann. § 78A–2–107(10) (2008); *id.* § 78A–2–225; Utah R. Jud. Admin. 3–108(3)(B).

The willingness of Judge Lyman and other Utah judges to serve across district and jurisdictional lines maximizes the efficient use of limited judicial resources.

*Sports, Inc.,* 740 P.2d 1368, 1370 (Utah Ct. App.), *cert. denied,* 765 P.2d 1277 (Utah 1987). Further, "[i]n determining whether the court abused its discretion, we 'balance the need to expedite litigation and efficiently utilize judicial resources with the need to allow parties to have their day in court.'" *Hartford Leasing,* 888 P.2d at 697 (quoting *Meadow Fresh Farms, Inc. v. Utah State Univ.,* 813 P.2d 1216, 1219 (Utah Ct.App. 1991)). Thus, we review for abuse of discretion the trial court's decision to dismiss for failure to prosecute. *See id.*

¶ 7 In analyzing whether a trial court has abused its discretion in dismissing a case for failure to prosecute, we use the five *Westinghouse* factors, which are

(1) the conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each party has done to move the case forward; (4) the amount of difficulty or prejudice that may have been caused to the other side; and (5) "most important, whether injustice may result from the dismissal."

*Meadow Fresh Farms,* 813 P.2d at 1219 (quoting *Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.,* 544 P.2d 876, 879 (Utah 1975)). Cheek contends that the trial court improperly applied these five factors to the facts of this case. We do not agree with all of Cheek's analysis, but we do agree that, taking the five *Westinghouse* factors together, the trial court exceeded its discretion in dismissing the case.

¶ 8 First, we consider the extent to which *Westinghouse* requires a court to take into account the actions of both parties. Cheek is correct that in considering a motion to dismiss for failure to prosecute, *Westinghouse* suggests that the conduct of both parties is germane. However, we have held that the plaintiff bears the primary responsibility for advancing the case and that the defendant's responsibility in this area "is limited." *Hartford Leasing,* 888 P.2d at 699. Further, "[a]lthough inaction on the part of a defendant may contribute to the justifiability of a plaintiff's excuse for delay, the duty to prosecute is a duty of due diligence imposed on a plaintiff, not on a defendant." *Country Meadows Convalescent Ctr. v. Utah Dep't of*

*Health,* 851 P.2d 1212, 1216 (Utah Ct.App. 1993). We previously referred to this concept as "the obvious" in explaining:

What each party has done to move the case forward can only be evaluated in light of each party's responsibility concerning the case. Of course, the plaintiff, as the party initiating the lawsuit, has the primary responsibility to move the case forward. The defendant's responsibility is limited to responding timely to the action, expeditiously attending to discovery, and moving any counterclaim along. The defendant has no general responsibility to move *plaintiff's* action to judgment.

*Hartford Leasing,* 888 P.2d at 698 n. 2 (emphasis in original). Ultimately what this means is that inaction by the defendant to move the plaintiff's claim along is irrelevant unless that inaction constitutes some actual hindrance, i.e., where the plaintiff can show that the defendant's inaction "contributed to [the plaintiff's] own delays." *PDC Consulting, Inc. v. Porter,* 2008 UT App 372, ¶ 10, 196 P.3d 626.

¶ 9 Certainly the analysis is a bit different where the defendant has filed a significant counterclaim and therefore bears plaintiff-like responsibility for prosecuting its counterclaim. When this occurs, the court should look to the actions of the parties in advancing their respective claims against the other, identifying whether the party has prosecuted the claim it has brought. But even in that situation, the defendant is not obligated to actively advance the plaintiff's claims.

¶ 10 With this guidance in mind, we address Bulloch's failure to pursue its counterclaim. While Cheek argues that Bulloch is also responsible for the lack of prosecution that has typified much of the history of this case, Bulloch's inaction on its counterclaim is irrelevant to our consideration of whether Cheek failed to prosecute. Cheek does not contend that he was somehow unable to prosecute his complaint without Bulloch pursuing its counterclaim against Cheek. Bulloch's counterclaim was triggered by the filing of Cheek's complaint against Bulloch, but Bulloch had little independent interest in pursu-

ing it.[2] When Bulloch perceived that Cheek had failed to prosecute his claims, Bulloch apparently had no real desire to continue to pursue its counterclaim and was content to have the case dismissed altogether.

¶ 11 Cheek also complains that Bulloch contributed to the lack of progress in the case when Bulloch's counsel failed to return Cheek's counsel's phone calls in July and August of 2006. Further, Cheek notes that while Bulloch's counsel continued to cooperate with Cheek's counsel in the final years of the dispute, Bulloch's counsel explained on multiple occasions that he was unable to get his client to focus on the case. The significance of each of these assertions of inaction, in terms of actually hindering Cheek from proceeding, is minimal. First, assuming that Bulloch's failure to communicate with Cheek during this two-month period did somehow delay the case, this is insignificant, in context. Specifically, a two-month period of unresponsiveness to communication by the other party's attorney is inconsequential when viewed in light of the general lack of progress in the case for over six years. Bulloch's nonresponsiveness during that two-month period did nothing to actually hinder Cheek from proceeding with the case. At any time, Cheek could have compelled discovery, if any was outstanding, or otherwise moved its case to trial, whether or not Bulloch's attorney was returning phone calls or enthusiastically participating in the litigation process.

¶ 12 While we do not believe that Bulloch had any obligation to advance Cheek's claims against it, or to make Cheek's job any easier, what does trouble us is the abrupt course-altering motion to dismiss that came after both parties appeared content to engage in a slow-moving yet mutually cooperative negotiation process over the course of so many years. It is in this vein that Bulloch's lack of

interest in the litigation, evident in its ongoing correspondence with Cheek (or the lack thereof), becomes more significant. In light of this perspective on the actions of both parties, we briefly consider the *Westinghouse* factors.

■ ¶ 13 The first three *Westinghouse* factors examine the conduct of the parties, the opportunities each party had to move the matter along, and what the parties actually did to move the case forward. It is true, as Bulloch argues, that Cheek could have more aggressively advanced the prosecution against Bulloch over the years by following the court's directive to file a scheduling order, by acting more promptly in discussing the issue with the insurance company,[3] or by regularly communicating with the court about the case's progress.

¶ 14 While this case was clearly on the slow track from its inception, much more went on between the attorneys—and between Cheek's attorney and Bulloch's insurer-than was reflected in the court's pleadings file. During the vast majority of the life of this case, Cheek has maintained contact with Bulloch, attempted to negotiate, inspected the property, and so on.[4] This ongoing communication, albeit infrequent, was relatively consistent over the course of the case. While Bulloch had no duty to encourage Cheek to propel the litigation forward, Bulloch did appear to be satisfied with its pace, leaving Cheek to reasonably believe that the pace was not problematic from Bulloch's perspective. In fact, Bulloch was unresponsive to Cheek's communication at various times. And at one point several years into the case, Bulloch even told the court it would need significantly more discovery time. Bulloch's conducting itself lackadaisically and with sustained disinterest for so long, and then

---

2. At oral argument, counsel for Bulloch pointed out that the counterclaim was for payment of a relatively small sum and suggested that it had to be asserted as a compulsory counterclaim, *see* Utah R. Civ. P. Rule 13(a), but probably would not have been filed as an independent action had Cheek not sued in the first place.

3. Bulloch argues in its brief that "[t]aking two years to 'twist an insurer's arm,' making telephone calls, and sending letters to [Bulloch's]

attorney regarding the same cannot be considered prosecution of the case according to the rules and direction of the trial court."

4. Part of the delay in the case was a result of both sides switching counsel, with new counsel in each instance needing time to get up to speed. Cheek secured new counsel in June 2004 and then again in June 2006. Bulloch did the same in October 2008.

abruptly seeking to dismiss the case right after it appeared new counsel for both parties were getting serious negotiations back on track, seems to have blindsided Cheek's attorney.

¶ 15 Cheek had no warning that his case against Bulloch faced an imminent death sentence until it was too late for Cheek to sufficiently alter his actions, which actions Cheek reasonably believed to be adequate up until that time. Had Bulloch shown its impatience earlier, warning Cheek to move on or move out, perhaps this case would have progressed differently. Further, had Cheek failed entirely to communicate with either Bulloch or the court for an extensive period immediately prior to Bulloch's motion, the court would also have been more justified in dismissing. But mere weeks before Bulloch sought to dismiss, the parties were meeting together, inspecting the property in dispute, discussing plans to resolve the insurance issue, and actively pursuing negotiations with one another.

¶ 16 Next, looking to the fourth *Westinghouse* factor, we agree that there has been some prejudice to Bulloch in this case. After all, Bulloch has been a named defendant in this lawsuit for over eight years, incurring costs along the way. *Cf. Rohan v. Boseman,* 2002 UT App 109, ¶ 31, 46 P.3d 753 ("[N]ot granting the dismissal would have prejudiced the [defendant]s because they incurred costs[.]"), *cert. denied,* 59 P.3d 603 (Utah 2002). Additionally, Bulloch contends that having this pending lawsuit perpetually looming over its head surely has had an effect on Bulloch's decision making and periodic risk assessments. However, this contention rings somewhat hollow. If this lawsuit's pending status was so burdensome, Bulloch would have acted with more urgency in communicating with Cheek rather than appearing content with the slow-moving progress of the case, would have responded more promptly to discovery requests, and would have filed its motion to dismiss some years earlier.

¶ 17 Finally, the fifth *Westinghouse* factor looks to the injustice that will result from dismissing the case. A court must be cautious in dismissing a case for failure to prosecute, perhaps declining to do so "except when [the motion to dismiss] follows a substantial period of complete inactivity." *Maxfield v. Rushton,* 779 P.2d 237, 241 (Utah Ct.App.) (Orme, J., concurring), *cert. denied,* 789 P.2d 33 (Utah 1989). And we recognize that Cheek "had more than ample opportunity" to prosecute the case between 2003 and 2010. *See id.* at 240. But again, in light of the consistently slow pace of the case for so many years, which seems to have been satisfactory to both sides until immediately before the motion to dismiss was filed, we agree that Cheek will suffer more injustice if the case is dismissed than Bulloch will if it is not.

¶ 18 The trial court's concern with a case in which its file suggested that little had happened in nearly seven years is understandable. Rather than dismissing the case outright, however, the court could have, at least upon being presented with evidence of correspondence and other extrajudicial progress, fixed an imminent "drop dead" date by which Cheek was required to take specified actions on pain of having the case dismissed. But an outright dismissal of the case was too aggressive under all of the circumstances.

¶ 19 Accordingly, we reverse the trial court's grant of Bulloch's motion to dismiss for failure to prosecute. We remand for trial or such other proceedings as may now be appropriate.

¶ 20 WE CONCUR: STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN, Judges.