**2015 UT App 31**

# THE UTAH COURT OF APPEALS

JEFFERY RUSSELL FINLAYSON,
Petitioner and Appellant,

*v.*

STATE OF UTAH,
Respondent and Appellee.

Amended Opinion[1]
No. 20130151-CA
Filed February 12, 2015

Third District Court, Salt Lake Department
The Honorable Deno G. Himonas
No. 050901691

Landon A. Allred,[2] Attorney for Appellant

Sean D. Reyes and Erin Riley, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGE
STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W. BENCH
concurred.[3]

---

1. This is the second Amended Opinion modifying the Opinion issued October 23, 2014, and replaces both the original Opinion and the first Amended Opinion. In this version, the discussion in footnote 4 has been expanded.

2. On August 21, 2014, Landon A. Allred withdrew as counsel, at Finlayson's request.

3. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

DAVIS, Judge:

¶1    Jeffery Russell Finlayson appeals the district court's order dismissing his petition for post-conviction relief for failure to prosecute. We affirm.

BACKGROUND

¶2    In 1995, Finlayson was convicted of rape, forcible sodomy, and aggravated kidnapping. On January 27, 2005, Finlayson filed a pro se petition for post-conviction relief. Over the course of the next two years, Finlayson filed various motions related to his petition. In April 2006, the State filed a motion for summary judgment, to which Finlayson did not respond. In August 2006, Finlayson asked the district court to appoint counsel for him. In January 2007, pro bono counsel appeared on behalf of Finlayson. In February 2008, Finlayson's counsel obtained a court order to examine and copy the handwritten notes referred to by the victim during her trial testimony. Between February 2008 and June 2011, Finlayson and his counsel allegedly met occasionally to research the case, but during this time, counsel "did not file any materials with the Court, nor did he have any contact with counsel for the State." In August 2008, Finlayson was paroled.

¶3    In June 2010, Finlayson was reincarcerated in connection with new charges arising from another incident. In September 2011, he was convicted on charges of aggravated kidnapping, aggravated assault, and damage to or interruption of a communication device, for which he was sentenced to six years to life in prison, up to five years in prison, and 180 days in jail, respectively. These sentences were to run concurrently with each other and with any other sentences Finlayson was already serving.

¶4    In late 2010, Finlayson's counsel allegedly obtained new evidence pertaining to the post-conviction petition but did not contact the State or file anything with the court. In June 2011, Finlayson sent a letter to the district court requesting an update on

the status of his case, at which point he learned that the case file had been destroyed in February 2009. Nearly a year later, in May 2012, Finlayson requested a status hearing on his case, which was held on June 1, 2012. Following the status hearing, the State moved to dismiss the case for failure to prosecute. Subsequently, Finlayson filed a motion to amend and an opposition to the State's 2006 motion for summary judgment.

¶5      On November 9, 2012, the district court heard argument on all pending motions. In a memorandum decision issued January 10, 2013, the court granted the State's motion to dismiss for failure to prosecute and denied the remaining motions as moot. Finlayson appeals.

ISSUE AND STANDARD OF REVIEW

¶6      Finlayson asserts that the district court abused its discretion by dismissing his petition for post-conviction relief for failure to prosecute.[4] "In reviewing a trial court's decision to dismiss for failure to prosecute, we accord the trial court broad discretion and

---

4. Finlayson raises several pro se arguments in addition to those asserted by his appellate counsel. First, Finlayson repeats counsel's arguments asserting that the court should have conducted a threshold interests of justice analysis and challenging the court's findings regarding the *Westinghouse* factors. Because we have addressed counsel's treatment of these issues, and Finlayson's arguments add nothing to the analysis, we need not separately consider his arguments. Finlayson also argues that the district court violated his constitutional rights and committed structural error by destroying his case file and denying his requests for an evidentiary hearing and other supplemental proceedings. We decline to consider these arguments because they were not preserved for appeal. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 ("[T]he preservation rule applies to every claim, including constitutional questions . . . .").

do not disturb its decision absent an abuse of discretion and a likelihood that an injustice has occurred." *Hartford Leasing Corp. v. State*, 888 P.2d 694, 697 (Utah Ct. App. 1994).

ANALYSIS

I. The District Court Was Not Required to Conduct a Threshold Interests of Justice Analysis.

¶7 In *Westinghouse Electric Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876 (Utah 1975), our supreme court identified five factors district courts should consider in determining whether to dismiss an action for failure to prosecute:

> (1) the conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each party has done to move the case forward; (4) the amount of difficulty or prejudice that may have been caused to the other side; and (5) most important, whether injustice may result from the dismissal.

*Meadow Fresh Farms, Inc. v. Utah State Univ. Dep't of Agric. & Applied Sci.*, 813 P.2d 1216, 1219 (Utah Ct. App. 1991) (internal quotation marks omitted) (citing *Westinghouse*, 544 P.2d at 879). Although the district court considered these factors in ruling on the State's motion to dismiss, *see infra* ¶¶ 11–21, Finlayson asserts that it did not adequately "consider special circumstances or the interests of justice in its decision."

¶8 Finlayson argues that criminal defendants seeking post-conviction relief should be "somewhat 'insulated' from motions related to timeliness." In support of this argument, he relies on our supreme court's interpretation of the "interests of justice" exception to the Post-Conviction Remedies Act's one-year statute of

limitations.[5] The supreme court's analysis prioritizes "individual rights" over "public interest in finality of judgments" and "costs to reprosecution," *Adams v. State*, 2005 UT 62, ¶ 23, 123 P.3d 400, and establishes a sliding-scale test examining "both the meritoriousness of the petitioner's claim and the reason for an untimely filing," *id.* ¶ 16. In light of this analysis, Finlayson asserts that a motion to dismiss for failure to prosecute should be held to a higher standard in the post-conviction context than in other contexts and that the court should be required to consider whether the interests of justice preclude dismissal.

¶9     We agree with Finlayson that district courts should not disregard the importance of a defendant's individual rights in ruling on a motion to dismiss for failure to prosecute. However, the *Westinghouse* factors already require the district court to consider "whether injustice may result from the dismissal." *Westinghouse*, 544 P.2d at 879. The *Westinghouse* court characterized this factor as the "most important" of the five and cautioned that a district court abuses its discretion by giving undue weight to expediency over

---

5. In 2008, the Utah Legislature replaced the interests of justice exception with a provision tolling the statute of limitations "for any period during which the petitioner was prevented from filing a petition due to state action in violation of the United States Constitution, or due to physical or mental incapacity," Act of May 5, 2008, ch. 288, § 6, 2008 Utah Laws 1845, 1846 (codified at Utah Code Ann. § 78B-9-107 (LexisNexis 2012)), and "during the pendency of the outcome of a petition asserting" "exoneration through DNA testing" or "factual innocence," Act of May 5, 2008, ch. 358, § 1, 2008 Utah Laws 2296, 2296 (codified at Utah Code Ann. § 78B-9-107). Although the interests of justice exception was in effect at the time Finlayson filed his petition for post-conviction relief, it has no direct application to his case because Finlayson's petition was dismissed for failure to prosecute, not denied as untimely. The supreme court's analysis of the exception is therefore relevant only to the extent that it discusses the value we should place on judicial economy when weighed against the individual rights of criminal defendants.

justice. *Id.* Thus, where the *Westinghouse* factors are appropriately applied, there is no danger that the "continued imprisonment of one who has been deprived of fundamental rights" would be justified by "the mere passage of time." *Julian v. State*, 966 P.2d 249, 254 (Utah 1998). We are therefore not convinced that the district court was required to conduct a separate interests of justice analysis in ruling on the State's motion to dismiss.

### II. The District Court Was Not Required to Consider Other Pending Motions Before Ruling on the Motion to Dismiss.

¶10    Finlayson next argues that the district court abused its discretion by dismissing his petition for post-conviction relief while other, related motions were pending. Because the district court granted the motion to dismiss for failure to prosecute, it concluded that the other motions were moot. The district court's ruling on the merits of the pending motions would have had no impact on its ultimate determination to dismiss the case for failure to prosecute, and we can therefore see no purpose in requiring the court to rule on motions that dismissal would render moot. Furthermore, while the dismissal may have "closed the courthouse doors" to Finlayson, this did not occur before Finlayson was given notice and an opportunity to be heard regarding the propriety of the dismissal. *See generally McBride v. Utah State Bar*, 2010 UT 60, ¶ 16, 242 P.3d 769 ("Procedural due process requires, [a]t a minimum, timely and adequate notice and an opportunity to be heard in a meaningful way." (alteration in original) (citations and internal quotation marks omitted)). Thus, the district court did not abuse its discretion in dismissing Finlayson's petition for post-conviction relief without ruling on the merits of the other pending motions.

### III. The District Court Did Not Exceed Its Discretion in Determining that the *Westinghouse* Factors Weighed in Favor of Dismissal.

¶11    Finally, Finlayson asserts that the district court misapplied the *Westinghouse* factors because (1) in analyzing the first three factors, it considered only Finlayson's dilatory actions, not the

State's; (2) it considered only prejudice to the State, not to Finlayson; and (3) it gave insufficient weight to the injustice factor. We address each of these arguments in turn.

A.    Conduct of the Parties in Moving the Case Forward

¶12    The district court found that although the State had not taken action to move the case along, it had done nothing to hinder Finlayson from doing so. Although the *Westinghouse* factors consider "the conduct of *both* parties" to be relevant to whether a case should be dismissed for failure to prosecute, *see Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975) (emphasis added), "[w]hat each party has done to move the case forward can only be evaluated in light of each party's responsibility concerning the case," *Hartford Leasing Corp. v. State*, 888 P.2d 694, 698 n.2 (Utah Ct. App. 1994). "[T]he plaintiff, as the party initiating the lawsuit, has the primary responsibility to move the case forward," while "[t]he defendant's responsibility is limited to responding timely to the action, expeditiously attending to discovery, and moving any counterclaim along." *Id.* Thus, "inaction by the defendant to move the plaintiff's claim along is irrelevant unless that inaction constitutes some actual hindrance, i.e., where the plaintiff can show that the defendant's inaction contributed to [the plaintiff's] own delays." *Cheek v. Clay Bulloch Constr., Inc.*, 2011 UT App 418, ¶ 8, 269 P.3d 964 (alteration in original) (citation and internal quotation marks omitted).

¶13    Finlayson asserts that he was hindered in prosecuting his case by the State's representation that it "was in no hurry to resolve the case" and by the court's destruction of his case file. The district court considered and rejected these arguments, concluding that they had little to no impact on Finlayson's three years of inactivity in prosecuting his case. The district court found it "unreasonable to conclude that the State's comment hindered [Finlayson's] ability to prosecute the action or otherwise contributed to [Finlayson's] complete lack of action for several years." It also found that because neither Finlayson nor his attorney had made any attempt to access the court's files between February 2008 and June 2011, the

destruction of the files in February 2009 could not have contributed to the delay. We agree with the district court that the State's and the court's actions do not appear to have affected Finlayson's ability to pursue his case.

¶14   Finlayson also asserts that the district court abused its discretion in finding that he had been dilatory in pursuing his case because he and his attorney "had been diligently working on researching and drafting an amended petition." However, the district court found that between February 2008 and June 2011 Finlayson had no contact with either the State or the court and did not file anything with the court; that his contact with the court between June 2011 and May 2012 "related only to his information requests"; and that he "failed to take any formal action to prosecute his claim or amend his petition until May 2012." We agree with the district court that Finlayson's continuing to work on the case with his attorney was insufficient to constitute diligent prosecution of his case where he made no effort to stay in touch with either the State or the court. *Cf. Cheek*, 2011 UT App 418, ¶¶ 2, 14–15 (finding it relevant that although "very little progress" was documented in the court's file for five years, the parties themselves had "consistent," if "infrequent," contact throughout that time, and observing that had the plaintiff "failed entirely to communicate with either [the other party] or the court for an extensive period immediately prior to the [defendant's] motion [to dismiss], the court would . . . have been more justified in dismissing"). Accordingly, it was not an abuse of discretion for the district court to conclude that the first three *Westinghouse* factors weighed against Finlayson.

B.   Prejudice

¶15   Finlayson next asserts that in analyzing the fourth *Westinghouse* factor—"what difficulty or prejudice may have been caused to the other side," *Westinghouse*, 544 P.2d at 879—the district court gave undue weight to the prejudice the State might suffer if the motion were not granted. Finlayson also asserts that the district court failed to consider the potential prejudice to Finlayson.

¶16    We reject Finlayson's assertion that the district court should have "favored protecting the innocent" and disregarded the potential prejudice to the State caused by missing evidence and faded witness memories. Finlayson relies on the supreme court's decision in *State v. McClellan*, 2009 UT 50, 216 P.3d 956, in support of this assertion. *See id.* ¶¶ 27–29. However, Finlayson's reliance on *McClellan* is misplaced. *McClellan* presented an unusual set of circumstances where a defendant's appeal of right was delayed for twenty years due to circumstances outside of his control. *Id.* ¶ 28. The court expressed reluctance to reverse, noting that as a result of the delay, much of the record and many of the exhibits were lost or destroyed and that a retrial was not fair to the victim. *Id.* ¶¶ 27–29. Nevertheless, because "our constitutional system is primarily designed to protect the innocent, not punish the guilty," the supreme court determined that a new trial was warranted despite the potential consequences to the State and the victim. *Id.* ¶ 29.

¶17    The unusual circumstances faced by the supreme court in *McClellan* are simply not comparable to those we face today. First, unlike the *McClellan* defendant, who was not responsible for the delays in that case, Finlayson is primarily responsible for failing to move his petition forward. Second, a post-conviction proceeding is ultimately civil in nature, *see* Utah Code Ann. § 78B-9-102(1) (LexisNexis 2012), and does not implicate the same constitutional protections as do criminal prosecutions, *cf. Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150 (holding that a defendant does not have the right to be represented by counsel in post-conviction proceedings, which are civil proceedings). Finally, the question before us is not whether the State would be prejudiced in retrying the criminal case, but whether it would be prejudiced in defending against the civil petition for post-conviction relief. We are unconvinced that potential prejudice to the State in this context should be disregarded by a district court ruling on a motion to dismiss for failure to prosecute.

¶18    As to Finlayson's assertion that the district court did not adequately consider the potential prejudice to him, we observe that the prejudice factor focuses on prejudice "caused *to the other side*."

*See Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975) (emphasis added). Presumably any dismissal for failure to prosecute would be prejudicial to the petitioner whose case is dismissed, but the injustice factor adequately guards against any *unfair* prejudice that may result to the petitioner. Thus, we reject Finlayson's assertion that the fourth *Westinghouse* factor required the district court to examine the potential prejudice to him.[6]

C.      Injustice

¶19     Finally, Finlayson asserts that the district court failed to give proper weight to the "most important" *Westinghouse* factor—"whether injustice may result from the dismissal." *See id.* Finlayson argues that injustice will result from the dismissal because he will be precluded from presenting newly discovered evidence and because dismissal could increase the time he spends in prison.

¶20     First, as the district court observed, Finlayson's claims based on newly discovered evidence were never formally asserted because the court denied his petition to amend as moot after dismissing the case. Thus, to the extent that "a new petition would be timely or otherwise well-taken," Finlayson "would be free to seek to raise those claims in a new petition for post-conviction relief." Finlayson asserts that he would face additional barriers if he filed a new petition for post-conviction relief, citing the State's argument below that his post-conviction claims were barred because they were previously addressed at trial or on appeal.

---

6. Even if the district court were required to consider prejudice to Finlayson, the potential prejudice Finlayson raises in his brief is irrelevant. Finlayson asserts that, like the State, he will be prejudiced by missing evidence if he is permitted to pursue his petition. But Finlayson's assertion of prejudice in this context does nothing to tip the scale toward denying the State's motion to dismiss because such a denial would not avoid the prejudice Finlayson asserts.

However, the State's argument is based on the merits of Finlayson's post-conviction claims, and we fail to see how this argument, if meritorious, would do any more to defeat a new post-conviction petition based on newly discovered evidence than it would to defeat Finlayson's existing petition.

¶21   Finlayson's argument that the dismissal will increase the time he spends in prison is likewise unpersuasive. Finlayson is currently serving a sentence based on new convictions that is to run concurrently to any sentence he may still be serving in connection with this case.[7] Thus, even if Finlayson's petition for post-conviction relief were ultimately granted, and even if his conviction were ultimately overturned, he would not be released from prison by reason thereof. For these reasons, the district court did not err in determining that injustice would not result from dismissal of the petition.

CONCLUSION

¶22   We determine that the district court did not exceed its discretion by granting the State's motion to dismiss for failure to prosecute. The district court was not required to conduct an interests of justice analysis independent of its analysis of the *Westinghouse* factors, and it was not required to rule on other pending motions prior to ruling on the State's motion to dismiss. Furthermore, the district court appropriately analyzed the *Westinghouse* factors. Accordingly, we affirm.

───────────

7. In subsequent pleadings before this court, Finlayson has suggested that the Board of Pardons has effectively extended his sentence. We are not aware of any support for this assertion in the record.