2018 UT App 2

# THE UTAH COURT OF APPEALS

CBS ENTERPRISES LLC AND ALLEN MYERS,
Appellants,
*v.*
LARRY T. SORENSON,
Appellee.

Opinion
No. 20160897-CA
Filed January 5, 2018

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 150903522

Daniel E. Witte, Attorney for Appellants

Larry T. Sorenson, Appellee Pro Se

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
concurred.

MORTENSEN, Judge:

¶1     Appellants CBS Enterprises LLC and Allen Myers
(collectively, CBS) filed suit against Larry T. Sorensen in the
district court, alleging that they were part owners of a Chinese
jade artifact valued at $34 million. After initially staying the
proceedings to allow for resolution of a related federal case, the
district court dismissed CBS's complaint for failure to prosecute.
CBS now appeals, arguing that the dismissal was an abuse of the
district court's discretion. Because we agree, we reverse and
remand.

¶2     Most of the details of the underlying dispute in this case
are irrelevant to the appeal. What is important, however, is the
procedural path the case has followed. In May of 2015, CBS filed

its complaint in the district court. Exactly three months later, the parties entered—and the district court approved—a stipulation regarding the security and storage of the jade artifact. Part of that stipulation was an order "that all litigation deadlines shall be held in abeyance."

¶3     Roughly a year after the district court proceedings had been stayed, the court provided notice to the parties of its sua sponte motion to dismiss the case "for lack of prosecution pursuant to Rule 4-103" of the Utah Rules of Judicial Administration. The court stated, "Unless a written statement is received by the court within 20 days of this notice showing good cause why this should not be dismissed, the Court will dismiss without further notice." CBS accordingly filed a written objection approximately one week later. Counsel for CBS followed up with the district court by telephone to ensure that the court had received the objection. Counsel also asked if a hearing had been or would be scheduled. According to CBS, its counsel was told that "no hearing was currently scheduled and that one might never be scheduled (and indeed, was likely not to be scheduled)," but that counsel would be contacted if that changed.

¶4     In its objection, CBS argued that it had "good cause why this case should not be dismissed" and that "aggressive litigation is occurring to continue to prosecute the matter." Specifically, CBS explained that the jade artifact had been "held as evidence in a federal criminal investigation until August 2016"—the same month the district court moved to dismiss the case for failure to prosecute. It provided the district court with the names and case numbers of federal cases that implicated the artifact. The objection concluded with a request that, if the district court did "not summarily agree that good cause has been shown," the court set "a hearing to further discuss the situation."

¶5     The district court obliged, sending out notice on September 22, 2016, of a hearing scheduled for less than one

week later—September 28, 2016. On September 28, no parties were present when the court called the case and it thus "order[ed] this case dismissed for lack of prosecution and for [the] parties['] failure to appear to update the court on the case."

¶6      Three days later, on October 1, 2016, CBS filed a "motion for reconsideration to alter or amend judgment and to vacate or clarify dismissal." In it, CBS alleged that no party had received actual notice of the September 28 hearing. And CBS reiterated its reasons why the case should not have been dismissed, including that "litigation is indeed being actively and properly prosecuted."

¶7      But beyond simply rehashing the reasoning set out in its objection, CBS also detailed apparent flaws in the notice and hearing process, explaining that counsel for CBS had not received actual notice of either the hearing or its resolution until he engaged in his standard periodic review of "the dockets for his various cases on Greenfiling just as a precaution."[1] CBS argued that its failure to appear at the hearing was attributable to mistake, inadvertence, or excusable neglect, citing rule 60(b)(1) of the Utah Rules of Civil Procedure.

¶8      Without addressing CBS's rule 60(b) argument or alternative request for clarification, the district court "denie[d] the Motion to Reconsider because there is no such Motion per the Rules of Civil Procedure." But rather than leave its order at that, the court expounded:

---

1. Greenfiling is one of three "certified electronic filing service providers" that "have completed the certification requirements necessary to become an Electronic Filing Service Provider with the Utah State District Courts." *Certified Electronic Filing Service Providers*, Utah Courts, https://www.utcourts.gov/efiling/ providers.html [https://perma.cc/A3TY-FCHL].

> Further, on August 31, 2016 a Notice of Intent to Dismiss was given to Plaintiff, to which an objection was filed on September 8th 2016. The Court having read the objection still had concerns regarding the content of the objection, so it set a[n in-]court hearing on the matter and provided notice to counsel of the hearing at the email address on file with the Court and at which counsel had received previous[] notices. Counsel failed to appear at the in[-]court hearing and the case was dismissed. Therefore, the Court finds more than adequate opportunity was provided to prevent this case from being dismissed and again, denies the Motion . . . .

¶9     CBS now appeals, arguing that the district court committed reversible error in dismissing the case for lack of prosecution. It sets forth several bases for reversal, but because we are persuaded that the case should not have been dismissed and that the court should have granted CBS's requested relief, we need not reach them all.

¶10     The district court admittedly has broad discretion in deciding whether a case should be dismissed for failure to prosecute, and we will not reverse

> absent an abuse of discretion and a likelihood that an injustice has occurred. Further, [i]n determining whether the court abused its discretion, we balance the need to expedite litigation and efficiently utilize judicial resources with the need to allow parties to have their day in court. Thus, we review for abuse of discretion the [district] court's decision to dismiss for failure to prosecute.

*Cheek v. Clay Bulloch Constr., Inc.*, 2011 UT App 418, ¶ 6, 269 P.3d 964 (alteration in original) (citations and internal quotation

marks omitted). The same standard applies in determining whether a district court erred in denying a rule 60(b) motion for relief. *See Robinson v. Baggett*, 2011 UT App 250, ¶ 13, 263 P.3d 411. We first consider whether the district court should have granted relief under that rule, and we then determine whether the case should have been dismissed for failure to prosecute in the first place.

¶11     The district court was correct that our rules of civil procedure do not contemplate motions to reconsider. *See Lindstrom v. Custom Floor Covering Inc.*, 2017 UT App 141, ¶ 10, 402 P.3d 171 (referring to a motion to reconsider as "a motion that does not exist under the Utah Rules of Civil Procedure"). And we afford district courts discretion in deciding whether to entertain such motions. *See A.S. v. R.S.*, 2017 UT 77, ¶ 28 (reiterating that "motions to reconsider are not recognized anywhere in either the Utah Rules of Appellate Procedure or the Utah Rules of Civil Procedure, and . . . that [district] courts are under no obligation to consider motions for reconsideration and any decision to address or not to address the merits of such a motion is highly discretionary" (citation and internal quotation marks omitted)). But CBS's motion was not a classic motion to reconsider, at least not exclusively.[2] And a court may not re-

---

2. Even if it were solely a motion to reconsider, which the district court could have refused to entertain, the court may still have exceeded its discretion in denying the motion. This is because once a district court undertakes to consider the merits of a motion to reconsider, its ruling must be within the bounds of its discretion. Here, the district court began its order by indicating that it would not grant the motion "because there is no such Motion per the Rules of Civil Procedure." But it then went on to decide the merits of reconsideration. *See supra* ¶ 8. Because the district court ruled on the merits of the motion, it was bound to rule on the motion reasonably.

characterize a movant's requested form of relief so as to avoid that request. *Cf. B.A.M. Dev., LLC v. Salt Lake County*, 2012 UT 26, ¶¶ 12–13, 282 P.3d 41 (explaining that a motion's form will not be disregarded to instead "consider its essential character"; courts should look at the form and substance of the motion, its caption, its citation of relevant rules, and its express request for relief in determining whether the motion meets the specific rule's requirements); *Lindstrom*, 2017 UT App 141, ¶¶ 9–12 (applying the framework set forth in *B.A.M. Development*).

¶12    CBS, perhaps ill-advisedly, captioned its motion as one "for reconsideration." But the caption also indicated that CBS sought "to alter or amend judgment" and that it wanted to "vacate or clarify dismissal." Not only did the motion's caption indicate that it was not solely one for reconsideration, but also the substance of the motion made that abundantly clear. In the opening paragraph of its motion, CBS explained that it sought relief under rules 59(e) and 60(b)(1), (5), and (6) of the Utah Rules of Civil Procedure.[3] So while the district court had discretion not to consider part of CBS's motion—the part seeking reconsideration, plain and simple—it had no such option to summarily disregard CBS's other grounds for seeking relief. And by doing so, it abused its discretion.

¶13    Furthermore, considering the merits of CBS's motion, it is apparent that the district court abused its discretion by denying relief. CBS specifically argued that its nonappearance at the hearing was the result of mistake, inadvertence, or excusable neglect; that it was not equitable for the order of dismissal to have prospective application; and that the complex nature of the interplay between the state and federal systems in this dispute

---

3. We primarily consider whether the district court erred under rule 60(b)(1). Because we conclude that it did and reverse on that basis, we express no opinion on whether the same result would be reached under rule 59(e) or rule 60(b)(5) or (6).

presented an additional reason that justified relief. *See* Utah R. Civ. P. 60(b)(1), (5), (6). Subsection (1) of rule 60(b) provides, "On motion and upon just terms, the court may relieve a party or its legal representative from a judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1).

¶14    Even setting aside the fact that this case had been stayed by the district court when the district court ordered its dismissal, we have no difficulty concluding that CBS was entitled to relief for excusable neglect. When the district court first notified the parties that it was considering dismissing the case, it did so by saying dismissal would result "[*u*]*nless* a written statement is received . . . showing good cause why this should not be dismissed." (Emphasis added.) The logical reading of that qualification is that if such a written statement were received, the case would not be dismissed. And CBS filed a written objection, detailing why the case should not be dismissed. It would have been reasonable for CBS to believe that it had complied with the district court's notice. The court made no mention of a hearing. It instructed the parties to provide a written statement or this case would be dismissed. And CBS provided a written statement.

¶15    Of course, that was not the end of things. Counsel for CBS had contacted the district court after filing the objection and was told that a hearing had not been scheduled and likely would not be scheduled. But CBS, in its objection, had suggested that if the district court was unsatisfied with its explanation of why the case should not be dismissed, the court should schedule a hearing. The district court, in its order denying CBS's request for relief, explained that it "still had concerns regarding the content of [CBS's] objection," and therefore scheduled a hearing. But in doing so, it gave less than one week's notice.

¶16    And to compound the situation further, counsel for CBS maintained that he had not received actual notice of the hearing.

The court did not make further inquiry into this claim, except to say that notice was sent to "the email address on file with the Court," which was addressed in CBS's motion.[4] This convergence of issues—from the district court saying it would dismiss unless it received a written statement, to the district court scheduling a hearing with less than one week's notice, to CBS's claim that it had not received actual notice of the hearing—is sufficient to demonstrate excusable neglect in not appearing at the September 28 hearing.[5] And thus the district court abused its discretion in refusing to provide relief on that ground.

¶17   But our analysis does not end there, lest on remand the district court see fit to again reach the question of whether the case should be dismissed for failure to prosecute. On the record

---

4. Counsel explained that he did not receive the email "apparently due to some kind of technical glitch," although he acknowledged that it was "unclear whether the glitch occurred because the email was sent improperly, or due to delays or defects with the Court's system, or because of technical defects or IP error on the part of the computer systems of [counsel's] law firm, and/or because of a technical defect with the Greenfiling system."

5. It is worth reiterating how quickly CBS responded to the court's dismissal. The hearing was held on September 28, and CBS filed its motion on October 1. This demonstrates an eagerness to correct the situation and should have factored into the district court's decision. *Cf. Charlie Brown Constr. Co. v. Leisure Sports Inc.*, 740 P.2d 1368, 1370 (Utah Ct. App. 1987) (affirming a district court's order of dismissal when the plaintiff's attorney did not learn of or take steps to reverse dismissal until seven months after the fact).

before us, we have no difficulty concluding that the case should not have been dismissed in the first instance.

¶18 To determine "whether a [district] court has abused its discretion in dismissing a case for failure to prosecute," we typically consider five factors:

> (1) the conduct of both parties; (2) the opportunity each party has had to move the case forward; (3) what each party has done to move the case forward; (4) the amount of difficulty or prejudice that may have been caused to the other side; and (5) most important, whether injustice may result from the dismissal.

*Cheek v. Clay Bulloch Constr., Inc.*, 2011 UT App 418, ¶ 7, 269 P.3d 964 (citation and internal quotation marks omitted).[6] But these factors are less applicable where, as here, there was an agreement between all parties and approved by the district court that the proceedings would be stayed.

¶19 In August of 2015, a year before dismissal, the district court had ordered the case stayed. In doing so, it specified that the case would resume "only after . . . future order of this Court." The first and only "future order" was not one that could have triggered the commencement of "normal accrual of litigation deadlines and litigation activities"; rather, the next order was the order of dismissal, which of course could not trigger the resumption of litigation activities because it ended the case. By ordering dismissal without first entering an order to

---

6. As the *Cheek* court acknowledged, these are known as the *Westinghouse* factors. *See Cheek v. Clay Bulloch Constr., Inc.*, 2011 UT App 418, ¶ 7, 269 P.3d 964; *see also Westinghouse Elec. Supply Co. v. Paul W. Larsen Contractor, Inc.*, 544 P.2d 876, 879 (Utah 1975).

resume litigation of the case, the district court contradicted its initial order staying the case.

¶20    While we are typically "reluctant to second-guess a trial court's interpretation of its own order," *State v. L.A.*, 2010 UT App 356, ¶ 16 n.4, 245 P.3d 213, this is an unusual instance involving a district court's complete disregard for its own order, rather than its interpretation of it. Indeed, nowhere in the district court's order of dismissal or denial of CBS's motion does the district court acknowledge the earlier order. Under these circumstances, it was an abuse of the district court's discretion to order that a stayed case be dismissed for failure to prosecute.

¶21    We reverse the district court's order denying relief under rule 60(b)(1) of the Utah Rules of Civil Procedure as well as its order of dismissal. We remand to the district court for further proceedings consistent with this opinion.

—————